# Cubbage, Appellant, *v.* Pittsburg Coal Company.

*Mines and mining—Deed—Extent of grant—Ventilating shaft.*

A grant of a right to mine and carry away "said granted coal, and in so doing to exercise the usual and ordinary privileges of ventilation and drainage upon the land" of the grantor, "but in such a manner as to do no unnecessary injury thereto, with the right also to transport other coal through underground entries made or to be made in the hereinbefore granted coal," coupled further with "a right of way for an inclined railway, the right to use one acre of land at or about the pit mouth, and the right to use land for siding and switches" along a railroad mentioned, does not include the right to sink a ventilating shaft in the land for the purpose of ventilating mines under adjoining lands.

Argued Oct. 23, 1906.   Appeal, No. 46, Oct. T., 1906, by plaintiff, from judgment of Superior Ct. April T., 1905, No. 171, reversing decree of C. P. No. 1, Allegheny Co., Dec. T., 1903, No. 215, in case of Boyd G. Cubbage v. Pittsburg Coal Company.   Before MITCHELL, C. J., BROWN, ELKIN and STEWART, JJ.   Reversed.

Appeal from Superior Court.

The facts appear from the opinion of the Supreme Court and from the report in 29 Pa. Superior Ct. 341.

*A. G. Smith*, with him *E. L. Kearns*, for appellant, cited: Potter v. Rend, 201 Pa. 318 ; Farrar v. Pittsburg, etc., Coal Co., 28 Pa. Superior Ct. 280.

*Charles Marshall Johnston*, for appellee.

OPINION OF MR. JUSTICE BROWN, January 7, 1907 :

By deed dated May 6, 1865, Joseph K. Cubbage, the father

of Boyd G. Cubbage, the plaintiff below, conveyed to William M. Lyon all the coal in and under a tract of land containing 31 acres and 45 perches situated in what was then the township of Robinson, Allegheny county. The conveyance of the coal included "the right to mine and carry away said granted coal and in so doing to exercise the usual and ordinary privileges of ventilation and drainage upon the land of said Joseph K. Cubbage, but in such manner as to do no unnecessary injury thereto, with the right also to transport other coal through underground entries made or to be made in the hereinbefore granted coal and over the railway hereinafter mentioned; also, a right of way for an inclined railway with the necessary appurtenances across the land of the said Joseph K. Cubbage from said granted coal to the Pittsburg & Steubenville Railroad, with the free and uninterrupted right to construct, maintain and operate the same; also, the use of one acre of land parcel of the tract aforesaid, at and about the pit mouth for a check house and other necessary and convenient uses in connection with mining operations, such as for deposit of timber, coal, slack, etc., but the same shall not be occupied by any dwelling houses; also, the use of such ground parcel of the tract aforesaid along the line of the Pittsburg & Steubenville Railroad as may be necessary and convenient for sidings, switches, etc., for the proper dispatch of business in loading and transferring coal." The habendum in the deed is as follows: "To have and to hold the said right of way, uses, easements and privileges unto the said party of the second part, his heirs and assigns, so long as he or the firm of Lyon, Short & Company, his or their heirs or assigns may have any coal, whether now owned or hereafter to be acquired, which can be brought by said route to the Pittsburg & Steubenville Railroad and the said described coal, hereby granted or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, his heirs and assigns, to and for the only proper use and behoof of the said party of the second part, his heirs and assigns forever, as the property of and in trust for the firm of Lyon, Short & Company, according to the provisions of a certain deed relating to the real estate of said firm."

The present appellant acquired title to 14 acres and 128

perches of the tract of 31 acres and 45 perches, subject to the grant by his father to Lyon.  The Pittsburg Coal Company, engaged in the business of mining and transporting coal, acquired all the coal rights, easements and privileges granted to Lyon by the elder Cubbage.  It operates a coal mine known as " The Grant Mine," comprising a territory of between 1,000 and 1,100 acres, which includes the tract of 31 acres and 45 perches conveyed by Cubbage to Lyon.  The court below found as a fact that under this 31 acre tract the coal has been mined and practically exhausted for more than twenty years, except so much as is necessary to support the entries and the surface over them.  In September, 1903, the defendant began to sink a shaft on plaintiff's land for the purpose of ventilating the " Grant Mine generally and in its entirety."  The shaft, if completed, would include an excavation of eight by ten feet in the coal of the mine, with the earth and debris taken therefrom and deposited about the mouth, as well as a suitable building to maintain a ventilating fan and other ventilating contrivances, including an engine.  After the work of sinking the shaft had progressed about two days, without the consent of the plaintiff, he notified the defendant to cease sinking it, and on its refusing to do so, filed this bill.  The question said by the learned judge writing the opinion of the Superior Court to be raised on this appeal is, " the right of the defendant to install, operate and maintain a ventilating shaft on the 31 acre tract so as to furnish sufficient air in the entries and workings in that tract and in the other operations of the Grant Mine."  As the result of our examination of the case, we regard the real question to be the right of the coal company to erect a ventilating shaft on the Cubbage surface for the purposes of ventilating the coal territory adjoining or surrounding the 31 acre tract.

It may be conceded, as is stated in the opinion of the Superior Court, that there is a present necessity for the ventilation of the Grant Mine to insure the health and safety of the miners working therein ; that the old workings generated black damp, a gas dangerous to life ; that the mine inspector of the district gave notice to the defendant below that the ventilating power must be increased, and that, after an examination of the premises, he selected the location which has been

adopted by the appellee as the most desirable for the safe ventilation of the mine, with the least damage to the surface land, and that in the development of the territory to which the 31 acre tract was the key or outlet some provision would of necessity be required for the ventilation of the deeper or more remote workings. But for no one of these reasons, nor for any other, can the rights and privileges which passed by the deed from Cubbage to Lyon be extended beyond the limitations expressly fixed by the grantor. If the words of the grant are clearly susceptible of but one interpretation, the understanding of grantor and grantee as to what passed by them must be found in them alone. What ought to have passed from a grantor to a grantee, or what ought to be understood as having passed, is never a question for a court, when the grant itself, in words not to be misunderstood, states exactly what did pass; and in the present case we cannot be asked to say what ought to have passed, or what rights and privileges the appellee ought to be allowed to enjoy, if the deed is free from doubt as to what was granted. In grants like this nothing is to be implied beyond a limitation which is clearly expressed : Potter v. Rend, 201 Pa. 318.

To the grant of the coal are coupled a right of way for an inclined railway, the right to use one acre of land at or about the pit mouth and the right to use land for siding and switches along the Pittsburg and Steubenville Railroad. In no one of these three rights is the matter of ventilation involved. The first right, which is contained in the grant of the coal and is the one involved in this proceeding, is " the right to mine and carry away said granted coal, and in so doing to exercise the usual and ordinary privileges of ventilation and drainage upon the land of said Joseph K. Cubbage, but in such a manner as to do no unnecessary injury thereto, with the right also to transport other coal through underground entries made or to be made in the hereinbefore granted coal and over the railway hereafter mentioned." In granting the right to transport other coal through entries made or about to be made in the granted coal no right is conferred of ventilating the territory from which such other coal might come, nor the entries beneath the 31 acres through which it might be transported. To the right to mine and carry away the coal granted, and to

that right alone, is the privilege annexed of exercising the usual and ordinary privileges of ventilation and drainage upon the surface.    In mining other coal no such right was granted. " In so doing," that is, in mining and carrying away the coal granted, the ventilating privilege was granted, and this right, so clearly limited, is not to be extended by implication, even if ventilation is needed in mining other coal and the same may be transported through underground entries beneath plaintiff's surface.    His right is to stand upon the words of the grant to Lyon, and the coal company must get the needed ventilation in some other way than by a trespass.

It may be that Joseph K. Cubbage, though willing to grant a right of ventilation and drainage upon his surface for the mining of the coal under it, was unwilling to extend such right to a coal territory of more than 1,000 acres adjoining or surrounding it, and, therefore, so limited it; or Lyon, the grantee, may not, forty years ago, have deemed important the right which his successor would now exercise; but, be this as it may, such right does not exist, because it was not granted. The limitation upon the right of ventilation that was granted was clearly expressed and fixed by the grantor himself, and accepted by the grantee.    It remains, and must remain, as fixing the territory to be ventilated on the surface of the Cubbage tract.    There is nothing in the habendum in any way affecting this limitation.    This is the whole case.

The decree of the Superior Court is reversed and the decree of the common pleas is affirmed, with costs to the present appellant.