Opinion by
 

 Stadtfeld, J.,
 

 This is an appeal by defendant in an action of assumpsit in which the court below entered judgment in favor of plaintiff for want of a sufficient affidavit of defense.
 

 Ralph Shallcross, appellee, was employed by appellant company as a salesman of trailers under a written contract entitled “Salesman’s Agreement,” dated July 1, 1938, and providing for the payment of certain commissions for the services to be rendered. Plaintiff’s statement sets forth that the employment under this contract continued until October 1, 1939; that there was due to him by reason of his work .under said contract, according to a statement, rendered to plaintiff by defendant on April 23, 1940, showing the standing of this account as of March 30, 1940, $306.30 in cash commissions and $197.02 in deferred .commissions, making a total of $503.32; that on June 30, 1940, under the terms of the contract one-half of the deferred commissions became due in cash, making a total then due in cash of $404.81 and $98:51 as deferred commission; that the balance of $98.51, deferred commission has become due and payable in cash by reason of the termination of plaintiff’s employment and refusal of defendant to pay plaintiff what is due him.
 

 
 *281
 
 Plaintiff’s statement further avers that on or about September 28, 1939, defendant sent him a letter pursuant to which plaintiff executed a new contract on October 1, 1939 under which he was to receive a salary of $150 a month and expenses of $45 a month up to the time of the termination of his employment on May 15, 1940.
 

 The new contract in question provides, inter alia, as follows: “2. Compensation — The Company agrees to pay the Salesman as compensation for his services a salary at the rate of One Hundred Fifty Dollars ($150) per month, payable weekly or semi-monthly, as the Company shall from time to time determine, which salary shall be based on 5% of minimum quota alloted to said Salesman.
 

 “If the record of the Salesman warrants, upon the recommendation of the Branch Manager, the Company may increase said salary as the occasion arises, however, should Salesman fail to deliver the volume of business as assigned in his minimum quota, the Company in that case is privileged to adjust said salary in line with performance.
 

 “3. Sales Quota — The Bonus Quota for each salesman, and towards which they should strive,, shall be set at thirty times their respective monthly salary. The Minimum Quota shall be set at twenty times the monthly salary. Salesman’s monthly quota herein established are:
 

 Minimum Quota $3,000 per month.
 

 Bonus Quota $4,500 per month.
 

 Quotas are subject to adjustments as salary and conditions may alter.”
 

 The affidavit of defense admits the contracts referred to, supra, the statement of the account with defendant, and the correctness of the amount due under the latter, but sets up a counterclaim under the later contract.
 

 
 *282
 
 Defendant avers that plaintiff was not entitled to have and receive under the later contract the said salary of $150 per month, but on the contrary that the salary was based upon a 5% minimum quota of monthly sales, which quota was $3,000 per month, and the plaintiff for the entire period from October 1, 1939 to May, 1940, only had sales in the sum of $16,550.59, and only in one month. did . said sales reach or exceed the $3,000 minimum quota, viz., in December, 1939, when plaintiff’s sales were $3,300, and pursuant to the authority given defendant did adjust the plaintiff’s salary in line with his performance, and allowed him credits of $1,046.46. Defendant, avers that there was advanced to plaintiff during the. period aforesaid $1,580.50 and that during that period plaintiff was not entitled to said salary as his rate of sales did not reach the minimum quota basis contracted for, and that the overpayments to plaintiff in excess of what he was entitled to under the later contract reduced his credit under the earlier contract, and exceeded his credit balance, and as a result defendant is not indebted to plaintiff in any sum, but on the contrary, plaintiff is indebted to defendant in the sum of $38.52.
 

 After argument of the rule for judgment, the court below entered judgment in favor of plaintiff in the sum of $487.18, the amount due under the original contract, less a deduction of $28.30 agreed upon by plaintiff’s counsel at the argument, according to the opinion of the court below by Bonnelly, J. From the judgment so entered, defendant appealed.
 

 The.decision in this case depends on the construction to be given to the new contract, in order to determine whether plaintiff was paid certain sums of money as absolute unqualified salary for services performed, or whether such payments were mere advances made by the defendant and conditioned upon the plaintiff’s earnings in commissions on sales, at least the amounts paid,
 
 *283
 
 so that his failure to meet his quota of sale's-would give the defendant a right to be reimbursed for any over-advance. ' ’
 

 Quoting from the opinion of the court below: “It is to be noted that the agreement specifically provides that plaintiff was to be paid as compensation for his services ‘a salary at the rate of $150 per month.’ The disputed phraseology in the agreement is ‘should Salesman fail to deliver the volume of business as assigned in his. minimum quota, the Company in that case is privileged to' adjust such salary in line with performance.’ Defendant contends that this gave it the right to pay plaintiff $150 each month with a further right to check the plaintiff’s sales for that month and in the event they failed to reach the minimum standard then to charge him with the sums overpaid. Plaintiff’s version of this part of the agreement, however, is that this provision merely gave the company the right to adjust his
 
 future
 
 wages, but that he was at all events entitled , to a minimum of $150 each month
 
 until
 
 such amount was changed- and when such amount was changed only his
 
 future
 
 salary could be adjusted downward.” . ■
 

 In support of plaintiff’s contention, he refers to the letter from defendant’s sales manager to plaintiff, entitled “Salesmen’s Commissions,” in reliance on which the new contract was executed. We quote therefrom as follows: “A new agreement has therefore been1 drafted to cover the situation, which I believe you will agree-is much more satisfactory- than the old drawing account arrangement inasmuch
 
 as no liability is created giving■ us the right to claim from salesmen overdrawals..
 
 -In other words, instead of advances we will pay salaries, and in addition, will pay a bonus which should be reasonably within the reach of all.”
 

 We quote from the opinion ,of the court below:' “We are not persuaded that the written memorandum is to be ignored as defendant insists, either by virtue of- the
 
 *284
 
 application of the parol evidence rule (see
 
 Gianni v. Russell,
 
 281 Pa. 320), or because of the doctrine that prior negotiations are merged in the final integration (see
 
 Upsal v. Rubin,
 
 326 Pa. 327). We are here concerned with the interpretation of a provision of the written agreement. As an aid in the proper construction of the writing, surely we may refer to a written memorandum explaining the object to be attained by the consummation of the new contract (Restatement of Contracts, section 242). Evidence of the conditions and circumstances surrounding formation of a contract may be considered if helpful in the interpretation of ambiguous words or terms of a contract. It is always permissible as an aid to interpretation to consider the pertinent purpose of the parties in entering into the contract
 
 (Rothstein v. Jefferson Ice Mfg. Co.,
 
 137 Pa. Superior Ct. 298.)”
 

 In construing a written contract, the effect is to be gathered not solely from the terms of the instrument, but from the real nature and character of the transaction, giving consideration to all the provisions under which the parties contracted, their situation, relations and any acts indicative of the effect they gave to it:
 
 Brock et al. Exrs. v. Real E. L. T. & T. Co.,
 
 318 Pa. 49, 55, 56, 178 A. 146;
 
 Walter v. Baldwin,
 
 126 Pa. Superior Ct. 589, 193 A. 146. The interpretation given by the parties themselves to the contract as shown by their acts or declarations will ordinarily be adopted by the court:
 
 Armstrong v. Standard Ice Co.,
 
 129 Pa. Superior Ct. 207, 211, 195 A. 171.
 

 We agree with the conclusion of the court below in construing the new contract. The contention of the defendant would enable it to shift the sales contract to a commission contract and to consider the payments as
 
 advances
 
 and not on account of
 
 salary.
 
 The very purpose of the new contract was, as set forth in the preliminary letter, to obviate this condition.
 

 
 *285
 
 Even if we eliminate the consideration of the letter as indicative of the intention of the parties, and concede that the agreement is open to the interpretation contended for by defendant; then the language of Mr. Justice Maxey in
 
 Ebbert et al. v. Phila. Electric Co.,
 
 330 Pa. 257, 267, 198 A. 323, is most pertinent: “If we concede that this guarantee is open to the interpretation appellant puts upon it, it must be conceded that it is
 
 equally
 
 open to the interpretation appellee puts upon it, and 'it is an elementary proposition that a written contract should in case of doubt be interpreted against the party who has drawn it’:
 
 Hempfield Twp. Sch. Dist. v. Cavalier et al.,
 
 309 Pa. 460, 463, 164 A. 602.”
 

 Judgment affirmed.