## Atlantic Refining Company *v.* Wyoming National Bank of Wilkes-Barre (et al., Appellant).

Argued November 26, 1946. Before MAXEY, C. J., DREW, STERN, PATTERSON, STEARNE and JONES, JJ.

228

*Samuel A. Goldberg,* with him *J. Q. Creveling, G. B. Kleeman* and *Edwin H. Sheporwich,* for appellants.

*Hopkin T. Rowlands,* with him *E. Humes Garber* and *Roy W. Johns,* for appellee.

OPINION BY MR. JUSTICE JONES, March 24, 1947:

Herman Jacobs, an additional defendant, appeals from a decree of specific performance in favor of the plaintiff in a suit by the Atlantic Refining Company (hereinafter referred to as Atlantic) against the defendant bank. The plaintiff joined Jacobs as a party defendant solely for the purpose of rendering doubly effective an incidental restraint sought against the bank's conveyance of the property in controversy to anyone other than the plaintiff, Jacobs having asserted a right thereto as its purchaser at an auction sale conducted by the bank.

After a hearing on the merits, the chancellor made an adjudication and entered a decree nisi awarding the plaintiff specific performance, as prayed for, and dismissing the bill as to Jacobs, at the costs of the defendant bank. Both the bank and Jacobs excepted to the adjudication and decree, but, before the exceptions had been passed upon, Jacobs, by leave of court, amended his answer so as to make a cross-bill of it, adding thereto a prayer for affirmative relief by way of specific performance in favor of himself. The court en banc ultimately dismissed all exceptions and entered a final decree directing the bank to convey the property in question to the plaintiff, dismissing the bill as to

Jacobs and dismissing his cross-complaint, at the costs of the defendant bank. Broadly stated, the question involved on this appeal is as to which one, if either, between Jacobs and Atlantic, is legally entitled to a conveyance of the property by the bank under the supportable findings. The material facts are not in dispute.

For a number of years, the bank has been the owner in fee of certain real estate at the corner of South Main and West South Streets in Wilkes-Barre, Pennsylvania, having a frontage of fifty feet on Main Street and running back along South Street a distance of one hundred and fifty feet, preserving an even width throughout. Continuously since 1937, Atlantic had been the lessee of the rear ninety-eight feet by fifty feet, having improved the leased property for use as a filling and service station for automobiles. The remaining portion of the property, i. e., the fifty foot frontage on Main Street by a depth of fifty-two feet on South Street has been under lease to other tenants who operate business establishments thereon. On April 28, 1943, Atlantic and the bank entered into a written renewal lease for a term of one year beginning May 1, 1943, for the portion of the property held by Atlantic as above stated. The lease provided that either party could terminate the tenancy at the end of the term by giving ninety days advance notice of intention so to do and that, in default of such notice, the lease, with all of its terms and conditions, should continue to run from year to year until terminated by the specified ninety-day notice prior to the expiration of a year's term. The lease also contained the following first-refusal-to-purchase option: "14. Lessor shall not sell or dispose of the demised premises during the term of this lease, or any extension thereof, without written notice to Lessee of Lessor's intention to do so. Lessor further agrees to notify Lessee in writing of any acceptable offer made to Lessor for the purchase of said premises, giving the terms of the offer and the name of the party or parties making such offer, and

agrees to grant and does hereby grant to Lessee a sixty (60) day option beginning with the date upon which Lessee receives said written notice from Lessor, to purchase said premises upon the same terms and conditions as contained in said acceptable offer. Should the Lessee fail to exercise said option herein granted and thereafter Lessor shall not sell or dispose of the premises to the parties making the acceptable offer above mentioned, then the option privilege shall automatically renew itself until said premises have been sold after a bona fide offer to Lessor, failure of Lessee to exercise the option herein granted, followed by sale upon the terms and to the parties mentioned in the notice in writing to Lessee."

In September 1944 (the lease to Atlantic still subsisting), the bank decided to offer the property now in controversy, consisting of the entire plot of fifty feet by one hundred and fifty feet, and certain other properties owned by the bank, for sale at public auction. The bank sent Atlantic an announcement of the proposed auction as contained in a brochure which also described the properties to be sold and the terms of sale, one of the terms being that the sales would be "subject to the rights of the tenants in possession". Atlantic forthwith made the bank an offer, limited to the premises leased by it and an additional six foot by six foot adjoining strip, which offer the bank promptly refused. After due notice by bills posted and newspaper advertisement, the property here involved was sold at the advertised auction on October 4, 1944, to Herman Jacobs, the additional defendant, for a bid of $41,750 which was acceptable to the bank. Upon the property's being knocked down to Jacobs, he at once certified in writing over his signature that he had purchased the described property for his bid of $41,750, and he thereby further agreed "to comply with the terms and conditions of the sale of said premises as above set forth [viz., in the brochure]" which he promptly did in full. Atlantic,

acting by a duly authorized representative, had participated in the auction to the extent of making several ineffectual bids for the property in suit. But, neither Atlantic's identity in that connection nor its contractual interest in the property was *actually* known to Jacobs at the time of the auction.

The bank notified Atlantic by letter of October 27, 1944, that it had received an acceptable offer of $41,750 from Jacobs for the purchase of the entire lot, the letter avowing that the notice was given "pursuant to the provisions contained in [the above quoted] paragraph 14 of the lease . . ." between the bank and Atlantic. In professed exercise of its option under the lease, Atlantic, by letter of November 1, 1944, notified the bank that it intended to buy the whole of the property at the bid made therefor by Jacobs. And, again, by letter of November 14, 1944, Atlantic "formally" notified the bank of its *exercise* of the option to purchase the entire lot "in accordance with the offer of Herman Jacobs". With this letter, Atlantic enclosed its checks in fulfillment of the requirements under the terms prescribed for the sale at auction. On November 24, 1944, the bank returned Atlantic's checks and refused to convey the property to it for the reason that the option to purchase contained in the lease was limited to the "demised premises", while Atlantic's offer, on the basis of Jacobs' bid, was for the entire plot. However, the bank did nothing further to complete the sale to Jacobs, nor did it ever execute a deed to him for the property. Such was the situation when Atlantic instituted the proceeding involved in this appeal.

The decree of the learned court below cannot be sustained. In no legally permissible view may Atlantic's preemptive contract right to purchase a *portion* of the property in controversy (i. e., *"the demised premises"*) be thought to extend to anything other than the property actually subject to the option in the lease. By virtue of the option, when properly exercised, Atlantic would

have such a "substantial interest" in the property described in its lease as constitutes an equity sufficient to support a bill for specific performance: *Kerr v. Day*, 14 Pa. 112, 115; see also *Stevenson v. Titus*, 332 Pa. 100, 105, 2 A. 2d 853, and cases there cited; and *Driebe v. Fort Penn Realty Company*, 331 Pa. 314, 317, 200 A. 62. Atlantic did not, however, have an equitable interest in the larger plot merely because that property happened to embrace "the demised premises" of the lease. Consequently, Atlantic is without standing to maintain the bill as drawn. Stated otherwise, while the bank's offer of the Main and South Streets plot as an entirety at the auction sale did not operate to impair or destroy Atlantic's option to purchase "the demised premises" (see *Driebe v. Fort Penn Realty Company*, supra, at p. 318), neither did it serve to enlarge Atlantic's rights so as to confer upon it a "substantial interest" in the larger property whereof "the demised premises" was but a part: see *New Atlantic Garden, Inc., v. Atlantic Garden Realty Corporation*, 194 N. Y. S. 34, 40, 201 App. Div. 404. Atlantic's right to purchase "the demised premises" at the acceptable bid of another exists by virtue of a contract in writing. The character and extent of the right is therefore to be determined by the terms of the contract, i. e., the lease, which expressly limits the lessee's option to purchase: *Moore v. Stevens Coal Company*, 315 Pa. 564, 568, 173 A. 661.

It is contended on behalf of Atlantic that the parties to the lease, by their conduct, placed upon the option privilege an interpretation entitling Atlantic to purchase at another's acceptable bid the larger plot of which the portion demised to Atlantic is but a part. Several answers to that contention readily suggest themselves, but, for present purposes, it should suffice simply to point out that there is no occasion calling for resort to the conduct of the parties to the lease in order to resolve the meaning of the option to purchase contained in the lease. The intention of the parties to a contract

is, of course, an important guide to the correct interpretation of its meaning: *Bangor Peerless Slate Co. v. Bangorvein Slate Co.,* 270 Pa. 161, 165, 113 A. 190. And, not infrequently, such intention is best evidenced by the relevant conduct of the parties themselves pursuant to their common understanding of their respective contractual rights and liabilities: *Shallcross v. Highway Trailer Company,* 147 Pa. Superior Ct. 279, 284, 24 A. 2d 71, and cases there cited. But, the construction which parties place upon their contract has interpretive legal bearing only where the language of the contract is of doubtful or ambiguous meaning: *L. C. Smith & Bro. Typewriter v. Alleman,* 199 Fed. 1, 4 (C. C. A. 3). Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent: *Greek v. Wylie,* 266 Pa. 18, 24, 109 A. 529; *Cubbage v. Pittsburg Coal Company,* 216 Pa. 411, 414, 65 A. 797. Here, there is neither doubt nor ambiguity. The lease, with special reference to its option-to-purchase clause, is unmistakably clear. Under it, Atlantic's privilege of purchasing "the demised premises" in specified circumstances cannot reasonably be stretched into an enforceable right to purchase a plot of increased size not described in the option: *New Atlantic Garden, Inc. v. Atlantic Garden Realty Corporation,* supra.

The appellee further contends that the bank's letter of October 27, 1944, formally notifying Atlantic of Jacobs' acceptable bid at auction for the whole plot constituted an independent offer by the bank of the entire premises which Atlantic by its letters of November 1st and 14th, 1944, to the bank had conclusively accepted. In no fair sense can the bank's letter to Atlantic be considered to have been a separate and unqualified offer of the entire plot. The bank was under a positive contractual duty to notify Atlantic before selling "the demised premises" to another. But, at that very time, there had arisen, upon the falling of the

auctioneer's hammer, and then existed between the bank and Jacobs a binding agreement of definite terms for the sale of the larger parcel by the bank to Jacobs, subject, of course, to the latter's subsequent compliance with all of the requirements and terms of the sale, and subject, further, to Atlantic's right to insist upon due recognition of its option to purchase the portion constituting "the demised premises": see *Pennsylvania Company for Insurances, etc., v. Broad Street Hospital*, 354 Pa. 123, 133, 47 A. 2d 281, and cases there cited. Within the time (viz., 48 hours), specified in the auction terms for the purpose, the bank had accepted Jacobs as the purchaser of the entire plot at his bid of $41,750, while Jacobs, on his part, had promptly complied with all the requirements resting upon him. His rights under the agreement of purchase so created had become fixed as between him and the bank subject, only, to their being defeated by Atlantic's exercise of its option under the lease. With the agreement between Jacobs and the bank thus fully consummated, the bank was incapable, as a matter of law, of making a valid, *bona fide* offer of the entire premises to Atlantic. And, at the same time, Atlantic, having had present at the auction an authorized representative who bid for the entire property, will not be heard to deny knowledge of the existence of the agreement of sale between the bank and the acceptable bidder at the auction or of the consequent inability of the bank to make an offer of the whole property to another inconsistent with that agreement. Thus, as there was no valid offer of the entire premises by the bank open to Atlantic's acceptance, for this further reason, there was no contract for which specific performance in favor of Atlantic for the whole lot could be awarded. Nor, conversely, may Atlantic's letters be deemed offers which the bank can be held to have accepted. The bank, having already accepted Jacobs' bid for the entire property, was in no position to accept an offer by Atlantic for the *whole* of the property. Fur-

thermore, the bank rejected, both promptly and expressly, Atlantic's abortive effort to extend the exercise of its option to the purchase of the entire plot.

The case of *First Nat. Exchange Bank of Roanoke v. Roanoke Oil Co., Inc.,* 169 Va. 99, 192 S. E. 764, upon which the court en banc largely relied is not in point. There, under substantially similar circumstances and a substantially similar option, the Supreme Court of Appeals of Virginia treated the property owner's like letter of notification to the optionee (of a third party's offer for more than the premises described in the option) as an offer by the owner to the optionee to purchase the entire premises which the latter had accepted. However, although there was a prior offer by a third party to purchase the entire premises in that case, at most it was but *an offer* which the lessor-owner had not accepted. Consequently, he was not bound to the original offeror in any way but was entirely free to expand his optionee's right to purchase to whatever extent of property he chose to include. In the instant case, so far as a sale of the entire premises was concerned, the bank was firmly bound by its acceptance of Jacobs' satisfactory bid at the auction sale and was not at liberty to offer for Atlantic's purchase more than "the demised premises".

As to the dismissal of the cross-complaint, little need be said in justification of the action of the learned court below in such regard. Not only had the auction sale to Jacobs been expressly made "subject to the rights of the tenants in possession" but, as a matter of law, he was bound with knowledge of the possessing tenant's (Atlantic's) right under its lease to the first refusal to purchase "the demised premises": see *Kerr v. Day,* supra, at pp. 116-117, where the rule as stated by Lord Eldon in *Taylor v. Stibbert,* 2 Ves. 437, is approvingly quoted, in part, as follows: " 'Where there is a tenant in possession under a lease, or an agreement, a person purchasing part of the estate must be bound to inquire on what terms that person is in possession. . . . [A]

tenant being in possession under a lease, with an agreement in his pocket to become the purchaser, those circumstances altogether give him an equity, repelling the claim of a subsequent purchaser, who made no inquiry as to the nature of his possession' ". Knowledge of an option to purchase is within the range of what such an inquiry bindingly reveals. In the annotation appearing in 74 A. L. R. p. 355 et seq., *Kerr v. Day,* supra, is cited (p. 356) as holding "that the possession of a lessee charges a purchaser with knowledge of a *provision of the lease granting an option to purchase"*. (Emphasis supplied). Obviously, Jacobs may not maintain a bill for the specific performance of his agreement to purchase the entire property. As to a large portion thereof, a prior right to purchase outstands in another. And, Jacobs is effectively bound, both directly by actual notice and impliedly by legal imputation, with knowledge of that fact.

Nor does the case present facts necessary to a ruling that Atlantic was estopped by its conduct from asserting its option privilege under the lease. An essential element of estoppel is that the party claimed to be estopped must have acted in such a way as to cause the complaining party to change his position to his injury in reliance thereon: *Fedas v. Insurance Company etc.,* 300 Pa. 555, 560, 151 A. 285. In the instant case there is no evidence, nor even intimation, that Jacobs changed his position because of anything Atlantic did or failed to do. On his own showing, Jacobs did not actually know of Atlantic's option or the fact that Atlantic was a bidder at the auction. Manifestly, therefore, he could not have relied upon something whereof professedly he had no knowledge. Neither is there any ground for imposing upon Atlantic a waiver of its option privilege. "A waiver may be express or implied, but in the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by

his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to": *Dougherty, Trustee, v. Thomas, Executor,* 313 Pa. 287, 297, 169 A. 219. As will be noted, the latter provision of the rule just quoted relates to inducement-to-prejudice which, as is well known, is also an essential element of estoppel. In considering the question of estoppel above, we there pointed out that there is nothing in this case to suggest that Jacobs was prejudiced by Atlantic's conduct. As to the intentional aspect of waiver, Atlantic gave no indication at any time of an intention to waive its option privilege. On the contrary, when called upon by the optionor to act in relevant regard, Atlantic promptly asserted its intention to exercise its option. An intention to opposite effect is, therefore, not to be presumed in the circumstances present.

With Atlantic unable to maintain its bill, involving the entire plot, and with Jacobs unable, likewise, to maintain his cross-bill for the same property, a considerable portion whereof is subject to the prior right of another to purchase, an impasse has been reached which is an effectual barrier to affirmative relief to either party under the existing circumstances. Atlantic may not amend its bill so as to include only "the demised premises", for there has been no third party agreement or offer to buy just that property alone. On the other hand, Jacobs may not seek specific performance for the excess fifty by fifty-two foot parcel fronting on Main Street, for he has no enforceable agreement for just that property. Nor may the court remold the agreements. As was said in *Zimmerman v. Rhoads,* 226 Pa. 174, 177, 75 A. 207, "It is not the function of a court of equity to make a contract for the parties, or to supply any of the material stipulations thereof. If any of the essential details are wanting a chancellor will not supply them in a decree for specific performance": quoted with approval in *Hoffman's Appeal,* 319 Pa. 1, 4, 179

238

A. 38, upon a refusal of specific performance of "an agreement merely to make a lease upon terms not then agreed upon". As matters thus stand, it is clear that both the bill and cross-bill must be dismissed. So far as voluntary action by the parties is concerned, the title to the property will continue where it has been, viz., in the defendant bank, until such time as the bank chooses to dispose of the property with full regard for Atlantic's right of refusal to purchase "the demised premises", as defined and described in the lease conferring the option, at the acceptable bid of another.

The decree is reversed and the cause remanded with directions to the court below to dismiss both the plaintiff's bill of complaint and the additional defendant's cross-bill at the costs of the defendant bank.