L. E. Wallach, Inc., Appellant, *v.* Toll.

424

Argued November 19, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Maurice S. Levy,* with him *Albert B. Soffian* and *Leon H. Fox,* for appellant.

*Thomas M. Garrity,* with him *Raymond Pearlstine, David Kanner, Wisler, Pearlstine, Talone & Gerber,* and *Edward J. Swotes,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, April 18, 1955:

The controlling facts in this case are not in dispute and tell their own story. They concern the rights of the corporate lessee under a clause of the lease granting it a certain option privilege to purchase the demised premises.

The lease was dated November 13, 1951. It demised the one-story store property situate at No. 6 East Lancaster Avenue, Ardmore, to be used for the sale of shoes, accessories and surgical appliances, for the term of 10 years beginning May 1, 1952, at a rental of

$425.00 a month. It contained the following provision: "Lessee has first option to buy property at price offered by purchaser, but must agree within one week whether or not he will meet offer."

On January 31, 1952, which was before the lessee entered into possession, the agents of the lessors wrote to its Secretary and Treasurer, Louis E. Wallach, a letter in which they stated that "In accordance with the terms of the lease which you signed on November 13, 1951 for the store at No. 6 East Lancaster Ave. Ardmore, Pa. we are writing to advise you we have an offer of $105,000.00 cash for the sale of premises No. 6-8-10 E. Lancaster Avenue, Ardmore, Pa. and if you desire to exercise your option to purchase same, you will have to notify us in writing not later than February 8th, 1952, otherwise the properties will be sold without further notice to you."

The following day Wallach wrote to the agents as follows: "In answer to yours of January 30th, I think you have the issue a little confused. You just state in your letter the price of three buildings. My option only holds good for No. 6 E. Lancaster. I am not interested in No. 8 and 10 at all. Therefore, I think you should brake [sic] this price down and advise me what No. 6 is being sold for, as that is all I am concerned with. Then, when I receive that information, I will be in a better position to tell you what to do. Also will you adjust the date that you are advertising me, so that the ten days will be moved back."

On February 4 the agents wrote: "In reply to your letter of February 1st, 1952, the sale price on your building along [sic], No. 6 E. Lancaster Ave., Ardmore, Pa. will be $52,500.00 cash."

On February 23, Toll and his wife as real owners, and Edward J. Boyle as the straw holder of the title, entered into a written agreement with Edith D. Tobin

for the sale to her of the properties nos. 6-8-10 E. Lancaster Avenue, for the price of $110,550 of which $5,-000 was to be paid in cash upon the execution of the agreement; the buyer was to take title subject to a mortgage of $65,000 to be created by the sellers before settlement and the balance of the purchase money, $40,-550 was to be paid in cash at the time of settlement. On May 16 sellers placed a mortgage of $60,000 on the properties and settlement with the purchaser was made on August 1. It is admitted that Edith Tobin purchased the premises with knowledge of the existence of the lease and the terms of the option contained therein. Meanwhile, on July 24, counsel for the purchaser wrote to the lessee that his client, Edith Tobin, was to take title to the premises on August 1st, and that, beginning with that date, all rents were to be payable to him. Wallach, on July 28, replied to this letter calling attention to the option which he had in his lease and stating that he was consulting his lawyer as to what action he could take to protect his rights. On October 24 the Wallach Company filed a complaint in equity praying that the deed to Edith Tobin for the premises No. 6 E. Lancaster Avenue, be cancelled and that the premises be conveyed to it at such price as the court should deem fair and equitable. In its adjudication the court apparently agreed with all of plaintiff's contentions and held that defendants had violated plaintiff's rights under its option; nevertheless it dismissed the bill, apparently on the theory that notwithstanding the sale to Edith Tobin plaintiff's option still remained valid and was unaffected by the conveyance to her of the three properties. From this decree plaintiff took the present appeal.

One of the agents who had himself written the letter of January 31st to Wallach testified that the offer therein referred to of $105,000 cash for the three prop-

erties was an offer that had been received from one George Barski. The question arises whether this was an independent offer of Barski himself, or one made on behalf of Edith Tobin, the subsequent purchaser. If the latter, the notice was inaccurate because, as appears from the terms of the written agreement with Edith Tobin, the price was not $105,000 but $110,550, and, instead of being wholly for cash, the sale was to be subject to a mortgage of nearly two-thirds the purchase price. If, on the other hand, the offer was that of Barski and not of Edith Tobin any offer from the latter which ultimately resulted in a sale and conveyance to her was never communicated to the lessee at all, nor, indeed, was there any evidence that she had ever made any offer of $52,500 for the property No. 6. In either event, the meaning of the statement in the letter that the "sale price" on No. 6 East Lancaster Avenue would be $52,500 cash was ambiguous, if not indeed wholly unintelligible. Did it mean that an offer in that amount had been received or that $52,500 was the price which the lessors were asking for the property and for which they were willing to sell it? Did it mean, more specifically, that Barski, or Edith Tobin as the case might be, had made an unconditional offer to purchase the one property No. 6 for $52,500 entirely independent of a unified sale of the three properties for the announced total of $105,000? Or was the amount thus stated a mere arbitrary allocation by the lessors to the property No. 6 of exactly one-half the price of the three properties? To make confusion worse confounded this same agent testified that there was an offer of $52,500 from one Lloyd Sullivan, but it is not pretended that any notice of *that* alleged offer was given to lessee in reply to the latter's inquiry of February 1st. And of course, as Wallach properly advised the agents, the lessee was not obliged to meet an

offer for the purchase of the *three* properties; (*Atlantic Refining Co. v. Wyoming National Bank of Wilkes-Barre,* 356 Pa. 226, 51 A. 2d 719).

Apart from the serious defects in the lessors' position thus pointed out, the vital and controlling fact is that even if the lessors did have an offer to purchase the property No. 6 free from any connection with the purchase of the two adjoining properties they did not accept such offer. They did not sell No. 6 to Barski or to Edith Tobin or to Lloyd Sullivan, or to anyone else, for $52,500 or for any other price, but sold the three properties as an entirety for the sum of $110,550. It ought to be too clear for discussion that, where there exists an option right such as here given to the lessee, if the lessor should receive an offer, submit it to the lessee, and the latter decline to act upon it, *but then the lessor himself does not accept the offer thus submitted to the lessee,* the lessee's rights would remain wholly unimpaired, and the lessor would be obliged to give the lessee the same opportunity to buy should he decide to sell the property at any time during the remainder of the term of the lease. To hold otherwise would be to construe the option as meaning that the lessee had the right to meet one and only one offer of purchase received by the lessor (in the present instance even before the ten year term began) and, even if that offer were rejected by the lessor, the latter could accept any subsequent offer received by him free and clear of any further obligation to the lessee; this would render the lessee's option right, which was obviously intended to continue throughout the term, wholly ineffective and practically useless. It was said in *R. F. Robinson Co. v. Drew,* 83 N.H. 459, 464, 144 A. 67, 70, that "The lessor's offer at a price the lessee declined to pay did not discharge him from obligation to offer when he decided to sell at a lower price. The lessee's

'preference as a purchaser' continued during the term unless the property was sold at a price the lessee would not pay. Decision to sell at the reduced price was within the tenor and scope of the option, and the lessee's right to buy thereat was given as much as the right to buy at the higher price. The option did not mean that its obligation should be discharged upon the rejection of a single offer. A contrary view, if it would not be promotive of bad faith, would largely destroy the evident purpose the option sought to accomplish." See, to the same effect, *Anderson v. Stewart,* 149 Neb. 660, 668, 32 N.W. 2d 140, 144, 145; *Atlantic Refining Co. v. Wyoming National Bank of Wilkes-Barre,* 356 Pa. 226, 238, 51 A. 2d 719, 725.

We are not in accord with the view of the court below that although the lessee's option right still remains valid and in full force it cannot be afforded any present remedy. The conveyance of the title to Edith Tobin marked a complete destruction of plaintiff's rights. The title to property No. 6 must be restored to the lessors and not again conveyed by them except to the plaintiff or to a purchaser whose offer, if rejected by the lessee, is thereupon accepted by the lessors. Of course plaintiff's prayer for an order directing that the demised premises be conveyed to it at such price as the court shall deem fair and equitable is obviously untenable.

The decree is reversed and the record is remanded to the court below with direction to enter a decree ordering a reconveyance of premises No. 6 E. Lancaster Avenue to the lessors and enjoining the latter, in accordance with the terms of the option contained in the lease, from selling and conveying said property to anyone other than the plaintiff without giving the latter an opportunity to meet any bona fide offer of purchase thereof; costs to be paid by defendant Toll.