[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
The plaintiffs have moved for summary judgment on their amended complaint filed March 8, 2000, seeking in pertinent part to have this court declare that the defendants violated the Connecticut Manufactured Home Act, General Statutes § 21-64 et seq., by denying the plaintiffs their alleged statutory right to purchase the Ryder Mobile Home Park (the "park"), where they reside. The defendants have opposed the motion and have filed a cross motion for summary judgment, arguing in pertinent part that they did not violate the statute and thus the plaintiffs' entire amended complaint must fail.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doucette v. Pomes,247 Conn. 442, 452, 724 A.2d 481 (1999). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Rivera v. Double A Transportation,Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999). The court finds that the following undisputed facts support the declaratory judgment sought by the plaintiffs with respect to the claims asserted in the second count (declaratory judgment) paragraph 29(b), the tenth count (declaratory judgment) paragraph 23(b), and the fourteenth count (declaratory judgment) paragraph 35(c), essentially stating that the plaintiffs have the right to purchase the park.[1]
The plaintiffs include named individual residents of the park and the Ryder Park Residents Association (the "association"). Located in Milford, Connecticut, and consisting of approximately 220 mobile manufactured homes, the park constitutes a mobile manufactured home park as defined by General Statutes § 21-64 (2). The park has been operated by the Ryder family since at least 1948. The 30-acre parcel upon which the mobile homes are situated was acquired by the Ryders in 1945 and 1947. In 1964 and in 1966, adjacent tracts were acquired by the Ryder family resulting in their ownership of an approximate 57-acre parcel of property. (Exhibit A to defendants, motion for summary judgment.) In 1994, the Ryder family subdivided the 57 acres into parcel A (15.97 acres +/-), parcel B (.67 acres +/-), parcel C (10 acres +/-), and remaining land of the estate of Ella B. Ryder and Philip G. Zink (30.623 acres +/-) which is the location of the park.
In 1994, parcels B and C were sold and developed as a Stop Shop Supermarket. In August 1998, the 47 remaining acres were owned by Robert J. Engelman, Trustee, and Bonita Springs, LLC (75%) and Philip Gary Zink (25%). In August 1998, the defendant Samuel J. Heyman entered into an agreement with the defendants Engelman and Bonita Springs pursuant to which Heyman agreed to purchase their interests in the property. On November 6, 1998, Heyman assigned his rights to purchase the Engelman/Bonita Springs interests to Arawana Mills Company, which in turn assigned its rights to Milford Holdings, LLC ("Milford Holdings"). The closing under the Engelman/Bonita Springs agreement occurred in November 1998, and title to the Engelman/Bonita Springs 75% interest was transferred to Milford Holdings. On or about March 9. 1999, Milford Holdings also purchased defendant Zink's 25% interest in the property.
Milford Holdings paid Engelman/Bonita Springs a total of $7,775,000 for their 75% interest. Milford Holdings also provided the sellers with environmental and other indemnifications.
Milford Holdings' transaction with Zink was in the form of a settlement agreement on a partition action pending between Engelman/Bonita Springs and Zink. Milford Holdings paid Zink $2,780,000 for his 25% interest in the property and for certain improvements, including the assets of Ryder Mobile Homes, Inc. (operator of the park). Milford Holdings also provided Zink with environmental and other indemnifications.
Prior to August 1998, the residents of the park had formed an unincorporated association. In January 1999, the residents incorporated the association that is a plaintiff in this action.
On or about November 5, 1998, Engelman/Bonita Springs notified the residents of the park that they intended to sell their 75% interest to a person "who intends to discontinue the use of the land as a mobile manufactured home park." (Exhibit I to defendants' motion for summary judgment.) Such notice is required by the Connecticut Mobile Manufactured Homes Act (the "statute"), General Statutes § 21-64 et. seq. (specifically, § 21-70 (f)(2)). On or about March 9, 1999, Zink sent an essentially identical notice to the park residents with respect to the sale of his 25% interest. (Exhibit L to defendants' motion for summary judgment.) In a notice dated January 29. 1999 and addressed to Engelman/Bonita Springs and Milford Holdings, the association wrote that it is interested in purchasing Ryder Mobile Home Park. (Exhibit J to defendants' motion for summary judgment.) A similar notice was sent to Zink and Milford Holdings on April 26, 1999. (Exhibit M to defendants, motion for summary judgment.)
On April 28, 1999, the association by its attorney sent a § 21-70
(f)(4) notice to the defendants advising them of its intent to purchase the park by matching the essential provisions of the offer made by Milford Holdings, and requesting the defendants to attend a closing on May 3, 1999, at its attorney's office. (Exhibit K to defendants' motion for summary judgment.)
The court also considers the legislative history of the mobile manufactured homes statute relevant to the plaintiffs' complaint for declaratory judgment. Connecticut law extensively regulates mobile home parks and their residents. The clear intent of the law is to provide specific rights and afford certain protections to mobile manufactured homeowners.
The term "mobile home" actually is oxymoronic, inasmuch as these homes are not easily relocated. A mobile manufactured home park must be licensed by the State of Connecticut and it is unlawful for any person to maintain or operate such a park in Connecticut without a license. The existing parks in Connecticut operate essentially as non-conforming uses that pre-exist zoning regulations. The relocation of such a home necessarily involves finding an existing park with space to accommodate an additional "mobile" home. The modest nature of such housing suggests that the owners are persons of limited economic resources. These realities are reflected in the legislative history associated with the enactment of Public Act 93-283 (codified at General Statutes § 21-70
(f)(2)-(4)), which amended the statute to allow park residents through their association to purchase the park where they reside.
This history is relevant both for purposes of statutory construction and for effectuating the legislative intent to avoid the severe consequence of dislocating mobile manufactured homeowners by an owner unilaterally closing a park. Public policy favoring the homeowners is further evidenced by the statutory mandate that "[u]pon the request of the association, the Department of Economic and Community Development shall assist the association in developing financing for the purchase of the park." (Emphasis added.) General Statutes § 21-70 (f)(3). The statute is remedial legislation that should be liberally construed to effectuate the legislative intent.
The defendants assert that the economic reality underlying this case involves a bidding war by competing real estate developers. The association is being funded by a competing developer who, by agreement of the association, will relocate the trailer park to the rear (almost 20 acres) portion of the 47-acre tract and commercially develop the extremely valuable front acreage where the park currently is located. The defendants concede that they too intend to relocate the park and its residents, and although their plan is to keep the park in Milford, it would be nearly one mile from where it is currently located.
Clearly, this case is about the association's choice of the lesser of these two evils, and that choice is not at all inconsistent with the statutory scheme. On the one hand, the statute seeks to protect the constitutionally recognized property interest of a park owner by permitting such owner to retain the right to sell the property or to close the park and develop the property. On the other hand, the statute provides the residents through their association the opportunity to purchase the park. The act does not restrict the association's method of financing the purchase, and in this case, the association was forced by the price (in excess of ten million dollars) of this obviously valuable property to deal with a developer who also intends to relocate their homes.
In further opposition to the association's alleged right to purchase this property, the defendants claim that § 21-70 (f)(3) provides only that the association may purchase "the mobile manufactured home park" defined in § 21-64 (2) as "a plot of ground upon which two or more mobile manufactured homes occupied for residential purposes are located." The defendants argue that the park when sold was not separated from parcel A, but was included in a package that combined the smaller parcel A with the almost 30 acres on which the park is located. Parcel A is not and never has been occupied by mobile homes, and the defendants now contend that the association cannot rely upon the statute as a source entitling them to purchase the entire tract when only 30 acres is park property. Moreover, according to the defendants, when the association notified the defendant owners that "it is interested in purchasing Ryder Mobile Home Park" it expressly limited its interest to a tract of land that does not include parcel A.
The association did, however, follow up on its earlier notices to the defendant owners by issuing a letter indicating that it "intends to purchase Ryder Mobile Home Park by matching the essential provisions of the offers" made by Milford Holdings, LLC to the previous owners and accepted by them. (Exhibit K to defendants' motion for summary judgment.) The association's counsel also requested the defendant owners to attend a closing on May 3, 1999 with documents necessary to convey title to the association.
On April 30, 1999. Milford Holdings' counsel responded to the above referenced notice by requesting information from the association about its ability to meet the essential provisions, including environmental indemnities backed by a financially capable indemnitor. Milford Holdings included in its letter that "Milford Holdings has no intention of even considering the proposed sale of the property to the association unless and until the association provides satisfactory evidence that it intends to continue the use of the entire 47-acre site as a mobile manufactured home park and not to advance the economic interest of an undisclosed principal." (Exhibit P to defendants' motion for summary judgment.)
Subsequently, the defendants learned that the plaintiffs' undisclosed principal is a competing developer. The defendants' April 30th correspondence was reiterated in a May 5. 1999 letter that proposed discussions between the defendant owners and the association. (Exhibit R to defendants, motion for summary judgment.)
In support of their argument that the plaintiffs cannot rely on the provisions of the mobile manufactured home statute to preserve their interest in purchasing the park, the defendants cite Rome Savings Bankv. B.W. Husted and Sons, Inc., 171 App.Div.2d 1048, 569 N.Y.S.2d 236, 238
(A.D. 4 Dept. 1991); Guaclides v. Kruse, 67 N.J. Super. 348, 178 A.2d 488,493 (A.D. 1961), cert. denied, 36 N.J. 32, 174 A.2d 658 (N.J. 1961); andAtlantic Refining Co. v. Wyoming National Bank of Wilkes-Barre,356 Pa. 226, 231, 51 A.2d 719 (1947). These cases involve the exercise of contractual rights of first refusal. Significantly, they rely on contractual rather than statutory rights, and therefore are distinguishable from the present case. In addition, the option tracts discussed in the cited authority were pieces of considerably larger parcels. as opposed to the land for sale in this case, where the properties are contiguous and the majority of the property is maintained as a mobile home park.
The defendants also criticize the plaintiffs' response to their statutory notice as somehow inadequate, contending that the association failed to pick up on the fact that the notices of sale reference the sale of "certain land a portion of which is currently being used as a mobile manufactured home park . . ." (Emphasis added.) While the land on which the park is located is clearly outlined on the subdivision map as not including parcel A, the fact that there are two parcels included in the sale was not clearly stated in the conveyance proposed by the defendant owners in their § 21-70 (f)(2) notices.[2] Indeed, the defendants have never offered for sale to the association the park property exclusive of parcel A, notwithstanding an express declaration by the association of its intent to exercise its statutory right to purchase the park.
Judgment is hereby entered declaring that the association has the right to purchase the Ryder Mobile Home Park pursuant to General Statutes § 21-70 et seq. Accordingly, the plaintiffs' motion for summary judgment is granted as to the second count (declaratory judgment) paragraph 29(b), the tenth count (declaratory judgment) paragraph 23 (b), and the fourteenth count (declaratory judgment) paragraph 35(c) of the amended complaint filed March 8, 2000. The plaintiffs' motion is otherwise denied. The defendants' motion for summary judgment is denied.
McWEENY, J.