## Peters v. Hoover

642

*John R. Miller* and *Miller, Kistler & Lee*, for plaintiff.

*Roderic A. Dietz*, for defendants.

CAMPBELL, P. J., July 16, 1963.—

*Statement of Pleadings and Issues Raised*

The pertinent pleadings in this case consist of a complaint in equity filed by plaintiff and an answer filed by defendants. The sole legal questions raised are first: whether or not a first refusal option between the parties is valid and enforceable, and secondly, whether defendants violated the terms thereof.

*Findings of Fact*

The court finds the following facts:

1. Prior to January 13, 1954, Sarah B. Hoover, one of the defendants, owned a tract of land fronting on U. S. Highway Route 322 in Patton Township, containing 2.70 acres.

2. On January 13, 1954, Sarah B. Hoover sold to plaintiffs a portion of her property containing 1.047455 acres and retained the residue thereof.

3. There was located on the premises sold to plaintiffs a small motel under construction and on the portion retained by defendant, Sarah B. Hoover, a store and a trailer court.

4. Contemporaneously with the closing of the sale of the real estate to plaintiffs on January 14, 1954, plaintiffs and defendant, Sarah B. Hoover, entered into a written collateral agreement which provided in paragraph 5 thereof as follows:

"In the event the seller decides to offer the balance of said real estate for sale, being the tract adjoining the premises being conveyed to the purchasers, then and in that event, the seller hereby gives the purchasers the first opportunity to purchase the same at such favorable price as shall be offered by a bona fide purchaser."

Said agreement was recorded on the nineteenth day of August, 1960, in the Recorder's Office of Centre County in Miscellaneous Book Volume 66, page 511.

5. Plaintiffs, subsequent to the purchase of the property, completed and enlarged the motel and constructed a residence thereon.

6. There was valid consideration for the collateral agreement dated January 14, 1954, and the first refusal option had value to the purchasers in that it gave them an opportunity to secure additional land for future expansion of their motel property in the event defendant, Sarah B. Hoover, decided to sell.

7. On February 24, 1961, defendant, Sarah B. Hoover, sent a letter to plaintiffs, the first paragraph thereof reading as follows:

"In accordance with paragraph 5 of an Agreement made between you and myself on January 14, 1954, you are hereby advised that I have received a bona fide

offer to purchase the balance of the real estate adjoining the premises conveyed to you on which is situate Hoover Trailer Park, for the sum of $45,000."

8. Plaintiffs by letter dated February 27, 1961, requested the name of the bona fide purchaser, but defendant refused to divulge the name thereof to the purchasers.

9. On March 13, 1961, plaintiffs, through their attorneys, directed the following letter to Sarah B. Hoover, one of the defendants:

"With further reference to your letter of February 24, 1961, addressed to Mr. and Mrs. L. B. Peters, regarding the option to purchase the balance of the real estate adjoining the Peters' premises, upon which is situate Hoover Trailer Park, following our letter of February 27th to you, in which we asked that you would advise us of the name of the purchaser, we have been advised that you would not disclose the name of the purchaser to us. We have further information that the proposed sale of $45,000.00 includes more than real estate which was covered by the option granted to Mr. Peters. We have, therefore, requested that we be advised as to the break down of the proposed sale, as to the amount allocated real estate and the amount allocated to other than real estate. Until we receive this information, Mr. and Mrs. Peters will not be in a position to advise you whether or not they will exercise the option granted to them by you, in the deed of January 14, 1954.

"Your letter of February 24th indicated that you would like to have an answer from Mr. and Mrs. Peters as to whether or not they would exercise their option within 20 days of that date which would be March 16th. Since we have not as yet received the break down of the proposed purchase price, we will not be in a position to advise you of Mr. and Mrs. Peters' decision by that time.

"Would you please, therefore, supply us with the allocation of the purchase price to real estate as soon as possible so that we will be in a position to advise you whether or not Mr. and Mrs. Peters intend to exercise their option to purchase."

10. On March 17, 1961, defendant, Sarah B. Hoover, through her attorney, advised plaintiffs as follows:

"With reference to your letter of March 13 I have been advised that the $45,000.00 includes only the real estate. It is my further understanding that there is on the property an extensive sewer and water system for trailers, a new building and a store building 30′ x 50′. The trailers are owned by individuals who pay a monthly rental for the land. I trust this will clarify the matter."

11. On March 24, 1961, plaintiffs advised defendant, Sarah B. Hoover, by letter as follows:

"With reference to the option which Mr. and Mrs. L. B. Peters hold to purchase the balance of real estate adjoining their premises upon which is situate Hoover Trailer Park, we have now been informed by your attorney, Roderic A. Dietz, that you have a bona fide offer from a purchaser at the price of forty-five thousand dollars, which price includes only the real estate. Based upon this information, this is to advise you that Mr. and Mrs. Peters do not intend to exercise their option to purchase the same for the price of forty-five thousand dollars.

"We wish, however, to call to your attention the provisions of the option contained in the agreement dated January 14, 1954, between yourself and Mr. and Mrs. Peters, which provides that the price at which you sell must be a price offered by a bona fide purchaser and that it must be only for real estate. Therefore, in the event there is any breach of the conditions of this option agreement, you may be liable in damages to Mr. and Mrs. Peters."

12. On March 27, 1961, defendant, Sarah B. Hoover, conveyed the residue of her property covered by plaintiffs' first refusal option to Ada M. Barnes, a codefendant.

13. All of the purchase price was furnished by and all of the negotiations for the residue of the tract of land covered by the first refusal option were made by one John C. Diebert, although title was taken in the name of Ada M. Barnes.

14. Both the said John C. Diebert and defendant, Ada M. Barnes, had knowledge of the first refusal option of plaintiffs.

15. The sale from Sarah B. Hoover to Ada M. Barnes included other than the real estate in that defendant, Ada M. Barnes, received through said sale the inventory of a grocery store, all of the fixtures and equipment located therein, and a considerable amount of household furniture, all of which had substantial value.

16. Defendant, Ada M. Barnes, took over the operation of the grocery store immediately upon consummation of the sale of the real estate.

17. The inclusion of the personal property in the sale was directly contrary to the information which defendant, Sarah B. Hoover, had given to plaintiffs.

18. Neither of defendants nor any of their witnesses could satisfactorily explain or demonstrate that the sum of $45,000 had been paid to defendant, Sarah B. Hoover. All testimony pertained to cash and notes and no checks or bank deposits were made.

19. No accurate settlement sheet was made showing the receipts and disbursements of this transaction although a settlement sheet was made on another transaction between the parties which occurred on or about the time of the instant transaction.

20. Although an attorney was employed at the outset of the transaction, a number of the details were

handled outside of the lawyer's office and without his knowledge.

21. The testimony of defendants and defendants' witnesses as to the payment of the consideration was evasive, contradictory and contrary to normal business procedures.

22. The fair market value of the premises sold to defendant, Ada M. Barnes, was considerably less than $45,000.

23. Defendant, Sarah B. Hoover, misinformed and misled plaintiffs when she advised them that the sale of $45,000. included only real estate and no personal property whatsoever was passing as part of the consideration.

24. The income tax return filed by defendant, Sarah B. Hoover, stated that the sale included the trailer park, grocery store building, equipment and improvements, and that the purchase price was $44,500.

25. Defendant, Sarah B. Hoover, could make no satisfactory explanation of the validity of the note, the payment or cancellation of which allegedly formed part of the consideration for the sale of the real estate involved in this litigation.

### Discussion

The facts are undisputed that one of the defendants, Sarah B. Hoover, owned a tract of land fronting on U. S. Highway Route 322 in Patton Township, containing 2.70 acres. She sold slightly in excess of one acre to plaintiffs, upon which was located a partially constructed motel, and retained the residue thereof. At the time of this sale she entered into a collateral agreement with plaintiffs giving them the first option to purchase the residue retained by her at such favorable price as shall be offered by a bona fide purchaser. Subsequent to the original purchase, plaintiffs completed and enlarged the motel located thereon and con-

structed a dwelling on the premises. Additional land was needed for the purpose of expansion and to protect themselves plaintiffs had defendant execute the first refusal option in question.

We shall devote our attention first to the question as to whether or not the first refusal option is binding and enforceable. This question was not raised by defendant in the pleadings nor at any stage in this case until the oral argument before the court. Defendants up until this point always recognized the option as a valid and enforceable one and attempted to comply with the specific provisions thereof. Notwithstanding these facts, the court feels that it is necessary to dispose of this question for the reason that no relief can be granted if there does not exist between the parties a valid first refusal option.

Defendant contends that the agreement in question is invalid for three reasons: (1) That it is not clear, certain, specific and unambiguous; (2) that it is void as an unreasonable restraint on alienation; and (3) that it is void in that it violates the rule against perpetuities.

A close examination of the agreement of January 14, 1954, between defendant, Sarah B. Hoover, and plaintiffs indicates that defendant was in the process of selling a portion of her property to plaintiffs. That portion of the property sold by and the portion retained by defendant were contiguous and were dependent upon each other for certain services such as water and sewage. There could be no misunderstanding with respect to what was meant by "the balance of said real estate" which was retained by defendant who had sold plaintiff a portion of her property. It could be defined precisely. Defendant recognized this when she attempted to comply with the agreement itself. We therefore hold that the facts of this case distinguish it from the case of Mrahunec v. Fausti, 385 Pa. 64, and that that

case does not control here. The price is fixed at such favorable price as shall be offered by a bona fide purchaser. The appellate courts of this State have recognized the validity of such a provision. See L. E. Wallach, Inc., v. Toll, 381 Pa. 423; Driebe v. Fort Penn Realty Co., 331 Pa. 314. The only point that would appear to lack exactness is the length of time that plaintiffs would have to elect to purchase or refuse to purchase after being notified of the offer of a bona fide purchaser. We believe the law on this point to be that the election must be within a reasonable time.

Where no time is specified for the performance of an act, the law implies that it must be done within a reasonable time and what is a reasonable time depends entirely upon the circumstances of each case: Orlowski v. Moore, 198 Pa. Superior Ct. 360. See also Detwiler v. Capone, 357 Pa. 495 and Barr v. Deiter, 190 Pa. Superior Ct. 454.

However, in this case, when defendant notified plaintiffs that she had a bona fide purchaser, she gave plaintiffs 20 days to make their election and plaintiffs complied with this stipulation and raised no objection thereto. The length of time to exercise the option was settled by the parties and raises no issue. We therefore feel that the agreement was sufficiently clear, certain, specific and unambiguous.

We have no hesitancy in holding that the agreement was not an unreasonable restraint on alienation. We have referred to this provision as a first refusal option. It could likewise be referred to as a preemptive provision. The restatement refers to a provision of this sort as a promisory restraint on the alienation of a legal estate and sets forth that a promisory restraint or forfeiture restraint on the alienation of a legal estate in land which is in the form of a provision that the owner of the estate shall not sell the same without first offering to a designated person the opportunity to meet,

with reasonable expedition, any offer received is valid unless it violates the rule against perpetuities: Restatement of Property, §413(1). It is ably set forth in the comment on this subsection as follows:

"The interference with alienation present in a requirement that a designated person be afforded a reasonable opportunity to meet any offer received from a third person by an owner desirous of selling is so slight that the major policies furthered by freedom of alienation are not infringed to a degree which requires invalidation. Under these circumstances, the owner has two potential buyers at the same price and is assured of a reasonably prompt culmination of the sale. Such restraints are, therefore, valid."

See also Concannon v. Haile, 81 D. & C. 480. In this case we are not concerned with respect to a forfeiture restraint as the agreement provides for no forfeiture if defendant fails to comply with the provisions thereof. Contracts of this sort are valid and enforceable if the provisions thereof are reasonable under the circumstances: Kinter v. Wruble, 17 D. & C. 2d. 574.

The rule against perpetuities applies to options: Barton v. Thaw, 246 Pa. 348; Restatement of Property, §413. This is not a case involving a lease where the rule against perpetuities would not apply: Restatement of Property, §395; Poland Coal Co. v. Hillman Coal and Coke Co., 357 Pa. 535. While the agreement itself provides no specific termination date or time limit with respect to the exercise of the first refusal option or the promisory restraint on alienation, it nevertheless is quite clear from the agreement itself that it is a personal right given by defendant to plaintiffs, all of whom were lives in being at the time of the execution thereof. Nowhere in the agreement are the words heirs or assigns included. It therefore is obvious that the maximum period in which this provision could be extended would be during the lifetime of the survivor

of the plaintiffs, and this therefore would comply with the requirements of the rule against perpetuities: Restatement of Property, §374.

We are impressed with the reasoning and holding of the case of Kershner, v. Hurlburt, 277 S. W. 2d. 619, decided by the Supreme Court of Missouri where the court construed a contract similar to the one here at issue:

"The instant contract, reasonably construed, does not violate the rule against perpetuities because the rights conferred by it are personal to the holders thereof and terminated at their deaths. (Inasmuch as all four of the contracting parties were alive at the time of the alleged breach we need not determine whether the contract rights existed during the life or lives of either or both the promisees or of either or both the promisors.) There is no specific provision that the contract shall be binding upon the heirs and assigns of the parties. Nor is there any indication in the contract that the parties intended that its terms would be binding beyond the lives of the parties. Thus, because the rights conferred by the contract were personal to the parties to it and did not extend beyond the periods of their respective lives, the instant contract does not violate the rule against perpetuities." Citing cases in Missouri, Kentucky, Massachusetts and Tennessee.

We would distinguish this case from that of Concannon v. Haile, 81 D. & C. 480, in which case the pertinent provision was contained in a deed which contained an habendum clause referring to heirs and assigns which caused the author of that opinion to hold that the term "parties", when used in a deed, normally includes heirs. We would respectfully disagree with some of the language of the case of Hale v. Scanlon, 88 D. & C. 506, to the effect that a contract of this sort could be interpreted as being either personal to the parties or extending to their heirs and assigns and

that since there is no reference to any measurement of time or life or lives in being that the maximum period allowed by the law against perpetuities is a maximum of 21 years. The court was there construing a contract which contained a provision that neither of the parties could sell to anyone not a party to the agreement unless and until all parties to the agreement shall willingly concur. This obviously is an unreasonable restraint on alienation, and on the basis of this alone the court arrived at the correct result. In the case at bar the agreement is obviously a personal one between the parties and if it be personal it therefore is limited to the lifetime of the survivor of the plaintiffs. Both of the parties hereto completely understood, relied upon and recognized the agreement as valid and binding and attempted to comply with the terms thereof. Defendants, by misleading plaintiffs, should not be allowed to deprive plaintiffs from becoming the purchaser of the property at a price equivalent to the offer made by a bona fide purchaser.

There is yet another reason why we think the rule against perpetuities does not apply here. The Estates Act of April 24, 1947, P. L. 100, sec. 4, as amended, 20 PS §301.4 provides as follows:

"Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, any interest not then vested . . . shall be void."

This we believe changes the common law rule. The late Judge Neeley summarized this point as follows:

"The rule at common law prohibits the creation of future interests which by possibility may not become vested within a life or lives in being and 21 years thereafter, exclusive of periods of gestation after lives in being. The common law rule dealt with the possibility of the vesting of the future interest as determined from reading the will or other instrument involved. The

Estates Act, however, deals with the actuality of events rather than the possibility thereof. We think that under the plain provisions of section 4 where a future interest created by a contract vests within the lives of the contracting parties, the future interest cannot be declared void as a perpetuity": Mumma v. Hinkle, 20 D. & C. 2d 621.

Plaintiffs had no option to purchase until defendant was willing to sell. She indicated her willingness to sell and quoted to plaintiffs the price which she allegedly was offered by a third party. Plaintiffs acted on the information which they received. Can defendants now contend that the agreement is invalid as a violation of the rule against perpetuities when the transaction ripened into an actuality and was no longer a possibility? Having proceeded to this point, it would seem that the only real question at issue would be: Did defendant honestly and fairly comply with the provisions of the agreement? We shall now proceed to this question.

It is quite evident that defendants violated the terms of this first refusal option. Defendant, Sarah B. Hoover, advised plaintiffs that she had an offer for the premises of $45,000. Plaintiffs inquired as to whether or not this offer was for the real estate only or whether it included certain personal property. Plaintiffs were advised that the $45,000 consideration included only the real estate and acting upon this information, plaintiffs declined to match the offer. Defendant then sold the property to Ada M. Barnes and included in the sale was the inventory of the grocery store, all of the fixtures and equipment located therein, and a considerable amount of household furniture, all of which had substantial value. It is quite clear that plaintiffs were not given the same offer which defendant, Sarah B. Hoover, later accepted. Plaintiffs must be given the first right to refuse the exact offer made by any other

bona fide purchaser: L. E. Wallach, Inc. v. Toll, 381 Pa. 423.

For the above reason alone, we feel bound to order a reconveyance of the property and a reinstatement of plaintiffs' first refusal option. There are, however, a number of additional circumstances involved in this transaction which would indicate that defendant did not act in good faith. When inquiry was made by plaintiffs as to the name of the prospective purchaser, defendant refused to divulge the name thereof to plaintiffs. The fair market value of the real estate in question was considerably less than the alleged purchase price, a reputable real estate broker having valued the same at $21,000.

By far the most disturbing factor which casts a serious doubt upon the good faith of the sale between defendants is the manner in which the sale was consummated. All parties knew of the existence of the first refusal option and had been advised that they would be held liable if there was any breach of the conditions of the first refusal option. In spite of this, no settlement sheet was made or kept of the transaction. Not a single check or bank deposit was used to consummate the transaction. The entire testimony of defendants pertained to the transfer of cash, cancellation of notes, and transfer of personal property. The testimony of defendants is so inconsistent, contradictory and confusing that it is impossible from reading the testimony to find out when, where and exactly how much consideration was paid to defendant, Sarah B. Hoover. It is difficult to understand that a transaction of this magnitude could be handled in such an unorthodox fashion. The validity of at least one note which allegedly was paid or cancelled as part of the consideration is open to serious question. The testimony with respect thereto was evasive and contradictory.

We do not propose to enumerate in detail all of the

contradictions and inconsistencies in the testimony, nor to comment further on the strange, unusual and unbusinesslike methods used in completing the transaction between defendants, Sarah B. Hoover and Ada M. Barnes. We are not basing our decision on these matters. We do, however, feel that this transaction was not in good faith and that plaintiffs ought not through this transaction be deprived of their rights to become a purchaser of the property under their first refusal option.

### Conclusions of Law

1. That the first refusal option contained in the agreement between the parties dated January 14, 1954, is valid and enforceable.

2. That defendant, Sarah B. Hoover, violated the terms thereof by neglecting to tender to plaintiffs the exact same offer which she allegedly accepted from Ada M. Barnes, the codefendant.

### Decree Nisi

And now, to wit, July 16, 1963, it is hereby decreed and adjudicated as follows:

1. The deed of conveyance from defendant, Sarah B. Hoover, to defendant, Ada B. Barnes, dated March 27, 1961, and recorded in Centre County Deed Book Vol. 256, page 176, is decreed to be void and of no effect and in violation of an option granted to L. B. Peters and Alice G. Peters, his wife, the plaintiffs.

2. Ada M. Barnes is hereby directed and decreed to execute a reconveyance of the real estate described in the aforementioned deed to Sarah B. Hoover.

3. The first refusal option between L. B. Peters and Alice G. Peters and Sarah B. Hoover, as contained in an agreement between the parties, dated January 14, 1954, recorded in Miscl. Book Vol. 66, page 511, is decreed to be and remain in full force and effect.

4. Defendant, Ada M. Barnes, is enjoined and restrained from conveying or in any way encumbering the premises described in the deed referred to in paragraph one except to reconvey the same to Sarah B. Hoover.

5. The Prothonotary of Centre County is directed to file this opinion, enter the within decree nisi, give notice to the parties or their counsel of record as provided by the rules of equity practice in Pennsylvania, and unless exceptions are filed to this decree nisi within 10 days after said notice, this decree shall be entered as a final decree by the prothonotary.

And now, to wit, July 16, 1963, an exception is noted and bill sealed for defendants.