614 A.2d 1191

**BOYD & MAHONEY, a Pennsylvania General Partnership t/d/b/a U.D. Properties**

v.

**CHEVRON U.S.A. and Cumberland Farms, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued April 7, 1992.

Filed Sept. 24, 1992.

26

Thomas L. Wenger, Harrisburg, for appellant.

R. Stephen Shibla, Harrisburg, for appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

BECK, Judge:

We address, inter alia, under what circumstances a court may order specific performance of a right of refusal of a piece of property which is part of a multi-state, multi-asset transaction.

Appellants Chevron, U.S.A., Inc. (Chevron) and Cumberland Farms, Inc. (Cumberland Farms), defendants below, appeal the order of the trial court granting specific performance and directing appellants to transfer title to the realty to plaintiff-appellee Boyd & Mahoney. Boyd & Mahoney claimed a right of first refusal. Appellants also object to the purchase price the trial court set for Boyd & Mahoney to pay in exercise of their right of first refusal. In addition, appellants challenge the court's calculation of the profits and rent earned from the property for the period Boyd & Mahoney was wrongfully

deprived of ownership. For the reasons set forth below, we affirm the orders of the trial court.

The facts of this case are as follows. Boyd & Mahoney is a real estate leasing firm. Appellants Chevron and Cumberland Farms are in the business of, *inter alia*, selling gasoline products. In 1981, Boyd & Mahoney's predecessor in interest conveyed the property at 4299 Union Deposit Road, Harrisburg, Pennsylvania, to appellant Chevron. The conveyance was made subject to the following right of first refusal:

EXCEPTING AND RESERVING unto the Grantor, its successors and assigns: (a) The first right and opportunity to repurchase the premises hereby conveyed. Grantee or its successors or assigns shall not sell or convey the premises hereby conveyed without first offering to Grantor, its successors or assigns, the first right and opportunity to purchase the said premises from Grantor herein, its successors or assigns, within sixty (60) days of written notification thereof, received by Grantor from Grantee, upon the same terms and conditions and at a purchase price equal to or exceeding those contained in any bona fide offer to purchase the premises as may be received by Grantee, its successors or assigns.

In 1986, in a multi-state, multi-asset transaction, Chevron sold the subject property, along with other parcels, business equipment, and inventory, to appellant Cumberland Farms. Both Chevron and Cumberland Farms had notice of Boyd & Mahoney's right of first refusal. In the contract between the appellants, Cumberland Farms agreed that in the event the holder of a right of first refusal exercised the right, Chevron would remit to Cumberland Farms the amount of payment received therefrom. However, Chevron did not notify Boyd & Mahoney that it had received an offer on the property, nor did it give Boyd & Mahoney the opportunity to purchase the property itself.

About a year after the transfer to Cumberland Farms, an attorney for Cumberland Farms contacted Boyd & Mahoney, seeking a release of its right of first refusal. Boyd & Mahoney notified appellants that it was opting to exercise its right

of first refusal. Appellants refused to convey the property, and Boyd & Mahoney filed the instant complaint seeking specific performance of the right of first refusal and also seeking other equitable relief. After hearing, the court entered orders granting specific performance to Boyd & Mahoney, and awarding them certain rental income and profits. This timely appeal followed.

We note that our review of a decree in equity is limited to a determination of whether the chancellor committed an error of law or abuse of discretion. Absent a mistake of law or abuse of discretion, such as where the chancellor's finding is "unsupported by the evidence or demonstrably capricious," the decree will not be disturbed. *Joseph D. Shein, P.C. v. Myers,* 394 Pa.Super. 549, 553, 576 A.2d 985, 987 (1990).

On appeal, appellants claim that the trial court erred in finding that Boyd & Mahoney's right of first refusal was activated by Cumberland's offer to buy the subject property. Cumberland states that it purchased the property as part of a package deal with Chevron. The transaction included "tracts of real property throughout the United States with terminals, warehouses and offices; specified motor fuel retail outlets; the inventories and accounts receivable therewith; and software and vehicles, among other assets," for a total purchase price of $310,207,000.

Appellants contend that a condition precedent of appellee's right of first refusal is that the offer to purchase must be specifically limited to the single property to which the right attaches, *i.e.,* 4299 Union Deposit Road. Because Cumberland Farms did not purchase the property by itself, but rather as part of a multi-state, multi-asset transaction, appellants claim that the offer to purchase did not trigger the right of first refusal.

We disagree. Common sense and the applicable case law of this jurisdiction require us to hold that a right of first refusal as to the conveyance of a property cannot be defeated by including that property in a multi-property or multi-asset transaction. *L.E. Wallach, Inc. v. Toll,* 381 Pa. 423, 113 A.2d

258 (1955); *Atlantic Refining Co. v. Wyoming National Bank of Wilkes–Barre*, 356 Pa. 226, 51 A.2d 719 (1947). The right of first refusal is a valuable property right. The importance of the right to its holder is that the holder may assert ownership of the property provided that the owner meets the conditions of the right. The appellants' argument that the right can be nullified simply by packaging the property for sale with another asset not so encumbered has no merit. Appellants' logic would deprive the holder of the right the benefit of his or her bargain.

 It is well-settled that contractual rights of first refusal to purchase realty may be enforced by a decree of specific performance. *Warden v. Taylor*, 460 Pa. 577, 333 A.2d 922 (1975); *Gateway Trading Co., Inc. v. Children's Hospital of Pittsburgh*, 438 Pa. 329, 336, 265 A.2d 115, 119 (1970); *Driebe v. Fort Penn Realty Co.*, 331 Pa. 314, 200 A. 62 (1938). To prevail on an action for specific performance the holder has the burden of showing that there is a valid agreement; that the agreement has been violated; and that the holder does not have adequate remedy at law. *Messina v. Silberstein*, 364 Pa.Super. 586, 528 A.2d 959 (1987).

 The agreement in the instant case is a valid agreement. It is complete, certain and clear. It is also apparent that appellant Chevron violated the agreement by not informing Boyd & Mahoney of the sale and not permitting them to exercise their right of first refusal. Also, Boyd & Mahoney did not have an adequate remedy at law. The trial court found that the property was a "key" parcel for Boyd & Mahoney, being situated at the entrance to Boyd & Mahoney's commercial development properties. Ownership of the property would permit Boyd & Mahoney to control the architectural design and future development of the area. Therefore, the trial court did not commit an error of law or abuse of discretion in ordering specific performance.

Appellants suggest that the proper remedy in this case is not specific performance but a reconveyance of the realty by Cumberland Farms to Chevron, with an injunction against

transferring the property except in accordance with Boyd & Mahoney's right of first refusal. We disagree. A remedy of this nature has been specifically rejected by our Supreme Court under factually similar circumstances. In *Warden v. Taylor, supra,* the trial court refused to grant specific performance, and instead imposed a constructive trust on the property that would prevent it from being conveyed to anyone other than the plaintiffs. The Supreme Court reversed the order of the trial court and ordered immediate conveyance of the property to plaintiffs, stating that:

> The only reason given by the court in support of its refusal to grant a decree of specific performance or urged by appellees in support of affirmance is that the relief granted is 'molded to the equities of the transaction' and adequately protected appellant's interest.

> This ground is an insufficient reason to deny specific performance to one who is otherwise entitled to it ... Under the court's findings and conclusions, appellant is entitled to more than 'protection of his interests'; having established to the satisfaction of the trial court that Taylor breached the contract by conveying the realty without first offering it to him, appellant is entitled to a decree compelling Taylor to perform his promise.

*Warden v. Taylor,* 460 Pa. at 578–80, 333 A.2d at 923–24. Boyd & Mahoney here is likewise entitled.

■ The trial court established the price of the right of first refusal at $158,000. Appellants claim this was error. The court derived the figure from the purchase price and estimate of fair market value reported by Cumberland Farms on the Realty Transfer Tax Affidavit of Value filed by the corporation after the transaction in connection with Cumberland Farm's payment of realty transfer tax. Appellants claim that this figure was set by Cumberland Farms solely for "internal and tax reporting purposes", and argue that the discretionary allocation of a portion of a total purchase price to one of the parcels in a multi-property transaction does not determine the price at which a holder of a right of first refusal may exercise its option. Appellants ask that we remand this matter to the

trial court for a hearing on the fair market value of the property. We decline to do so.

We are troubled by appellants' assertion that these representations, made by Cumberland Farms to the tax authorities for purposes of determining the taxes owed by the corporation to the Commonwealth, should not in fact be taken as true. On the Affidavit of Value, Cumberland Farms reported the "actual cash consideration" paid for, and "fair market value" of, the property at 4299 Union Deposit Road as $158,000. These statements were made by an officer of the corporation and were certified by that officer under penalty of law to be true and correct. Appellants do not claim that Cumberland Farms erred in these figures, which error it discovered and corrected later, such that its prior filing of this form should be disregarded. In their Answer to the Complaint, appellants admitted the averment of Boyd & Mahoney that the allocation of $158,000 to the purchase of the subject property "represented a fair and accurate determination of the proportionate value attributable to the parcel here involved within the context of the total transaction and the total purchase price."

At trial, William Gordon, president of Cumberland Farms' realty division, affirmed that the $158,000 figure in fact represented the corporation's "best allocation of the actual purchase price to the parcel involved." Based on all of the evidence, we find that the trial court did not err in finding that the value of the right of first refusal was $158,000.[1]

 Appellants also challenge several aspects of the trial court's determination of damages. After finding that appel-

1. Appellants cite to *L.E. Wallach* in support of their assertion that the court erred in ordering the property conveyed to appellee at the price of $158,000.00. Appellant's reliance on *Wallach* is misplaced. In *L.E. Wallach*, the right of first refusal offered to the optionee was on an offer that was ultimately not accepted by the optionor; and in the package-deal offer that was ultimately accepted, there was no allocation of price to the individual property at issue. Therefore, the court had no basis on which to allocate a price to the property for the purpose of ordering specific performance of the contract, and properly refused to do so. *L.E. Wallach, supra*, 381 Pa. at 423, 113 A.2d at 258. The situation here, where one of the parties to the transaction did allocate a specific price to the property in question, is very different.

lants had wrongfully deprived Boyd & Mahoney of ownership and possession of the subject premises, the trial court ordered Cumberland Farms to provide an accounting of profits earned from use of the property during the period of its wrongful possession. After reviewing the statements provided by Cumberland Farms, Boyd & Mahoney's objections thereto, and hearing testimony by both sides on the matter, the trial court entered judgment against appellants and in favor of Boyd & Mahoney in the amount of $501,872.00, plus an amount of $5,019.00 per month representing monthly rental and gasoline profits until delivery of the subject property to Boyd & Mahoney, with interest to accrue on all payments not timely made. In arriving at the figure of $501,872.00, the trial court found that Cumberland Farms, Inc. had earned rental income from the property, plus interest, in the amount of $346,138.00, and profit from the sale of gasoline, plus interest, in the amount of $155,734.00.

Appellants first claim that the trial court erred in using as the standard of damages to be awarded the amount by which appellant Cumberland Farms profited by its possession of the property, rather than the amount by which Boyd & Mahoney was harmed. Appellants contend that Boyd & Mahoney should have been compensated (if at all) only for the profit Boyd & Mahoney lost as a result of being deprived of ownership, which appellants claim is equal to the rental income that Boyd & Mahoney, a real estate leasing firm, would have derived from leasing the property to a third party. Appellants argue that Boyd & Mahoney could not have both rented the property to a third person and operated a gas station on it at the same time; therefore, using as the standard of damages Boyd & Mahoney's lost profits, Boyd & Mahoney is entitled only to an award of the rental value of the property.

We find that the trial court committed no error in using the benefit accruing to Cumberland Farms as the measure of damages in its award. We note again that our scope of review of a decree in equity is limited. *Joseph D. Shein, P.C., supra.* "A Chancellor has the power to shape relief according to the equities of a case under a plaintiff's prayer for general relief."

*Easton Theatres v. Wells Fargo,* 265 Pa.Super. 334, 350, 401 A.2d 1333, 1342 (1979), *appeal dismissed,* 498 Pa. 557, 449 A.2d 1372 (1982). It is true that the trial court here had the choice of fashioning a remedy based on the lost income suffered by Boyd & Mahoney as a result of appellants' breach.[2] However, the court in this instance elected not to do so, and under the applicable case law we cannot conclude that the trial court erred. The trial court chose to return to Boyd & Mahoney the amount by which appellant Cumberland Farms had been unjustly enriched through its wrongful possession. Case law in Pennsylvania has long recognized equitable accounting as an appropriate remedy for wrongful possession of property. *See Frankel v. Northeast Land Co.,* 391 Pa.Super. 226, 570 A.2d 1065 (1990) ("The general rule is that a purchaser with notice of a prior equity in the same property must not only release legal title but must also account for rents and profits," citing *Easton Theatres v. Wells Fargo, supra,* 265 Pa.Super. at 351, 401 A.2d at 1342); *Leafgreen v. Drake's Exrs.,* 300 Pa. 369, 373, 150 A. 656, 657 (1930) (vendor wrongfully withholding transfer of title to a purchaser "is regarded as trustee of the land for the benefit of the purchaser, and liable to account to him for rents and profits, or for the value of the use and occupation"). *Accord, Howell's Estate,* 224 Pa. 415, 73 A. 445 (1909); *Candy v. Kean,* 159 Pa.Super. 596, 49 A.2d 524 (1946). Since the trial court did not abuse its discretion or commit an error of law in choosing an equitable accounting as the basis for its award of damages, we will not disturb the order of the trial court on that ground.

**2.** As one option, which the trial court did not take, the case law would have permitted the trial court to limit damages to Boyd & Mahoney's loss of profits. *See, e.g., AM/PM Franchise v. Atlantic Richfield Co.,* 373 Pa.Super. 572, 575, 542 A.2d 90, 92 (1988), *aff'd in relevant part, rev'd in part,* 526 Pa. 110, 584 A.2d 915 (1989) ("Recovery for loss of profits under Pennsylvania law is allowed where such loss was caused by a plaintiff's inability to use property damaged, destroyed or withheld by defendant's wrongful conduct"); *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 101, 464 A.2d 1243, 1248 (1983) (plaintiff's lost profits, proximately caused by defendant's wrongdoing, are recoverable both in contract and in tort); *Kosco v. Hachmeister, Inc.,* 396 Pa. 288, 152 A.2d 673 (1959) (plaintiff restaurant owner may recover his lost profits as well as value of the building destroyed in landslide caused by defendant).

■ Appellants also claim that the trial court erred in its calculation of the amount of profit accruing to Cumberland Farms from the use of the premises. Again we disagree. The trial court found that Cumberland Farms benefitted from its occupancy of the premises, first, in the amount of the rent it would have had to pay to a third party for use of the premises had it not owned the property. The court estimated this to be $5,319.00 per month, based on the testimony of Boyd & Mahoney's accounting expert that Cumberland Farms' General Ledger and other internal accounting records showed this amount logged as rental income attributable to the subject premises, and the court's own review of these documents. In addition, the court found that Cumberland Farms made a profit on the wholesale sale of gasoline products to the gas station on the premises in the total amount of $137,091.99. The court took this figure directly from a document produced by Cumberland Farms. The document was offered by Boyd & Mahoney as a discovery admission in the July 1, 1991 hearing on damages, and was admitted without objection by appellants. (R.R. 120a). Appellants first claim that it was error for the trial court to rely on Cumberland Farms' General Ledger and other internal accounting documents, as opposed to the "Income Statement" prepared by Cumberland Farms for submission to the court in this litigation. This document was an edited version of Cumberland Farms' financial documents that eliminated the rental income item, and showed an overall loss in the gas station's operation on the premises.

■ Essentially, appellants are asking us to substitute our findings of fact for those of the trial court, which we cannot do. In reviewing an award of damages, the appellate court will defer to decisions of the trier of fact, who is in a superior position to appraise and weigh the evidence; we will reverse the trial court only where it clearly appears that the amount awarded resulted from "partiality, caprice, prejudice, corruption or some other improper influence." *Delahanty v. First Pennsylvania Bank, N.A., supra,* 318 Pa.Super. at 117, 464 A.2d at 1257. The trial court's findings here are amply

supported by evidence of record and will not be reversed on appeal.

Appellants also claim that the trial court erred in finding the rental income to be part of the "profit" accruing to Cumberland Farms by virtue of its occupancy of Boyd & Mahoney's property, as this item represents an intra-company charge to the station occupying the premises for purposes of determining that station's profitability compared to others within the company, and does not reflect any actual payment from a third party to Cumberland. This fact does not affect the propriety of the trial court's inclusion of this item in its award of damages. An award of damages based on an equitable accounting seeks to turn over to the party wrongfully deprived of possession all *benefits* accruing to defendant by reason of its wrongful possession. *See Leafgreen v. Drake's Exrs., supra,* (defendant must account for the "value of the use and occupation"). By owning the property itself, Cumberland Farms saved itself the amount of rent it would have had to pay to a third party. It was therefore benefitted in that amount as surely as though it had received a cash payment therefor.

Finally, appellants claim that the trial court erred in entering judgment against appellant Chevron on an equitable accounting of the profits accruing to appellant Cumberland Farms, when only Cumberland Farms, not Chevron, was in possession of the premises. We find this issue waived for failure to raise it in appellants' post-trial motion, and will therefore not consider it here. *Red Oak Co. v. Kempton,* 298 Pa.Super. 516, 445 A.2d 108 (1982).

Orders affirmed.