664 A.2d 545

Michael HAHALYAK, Trustee of the Clark Building, Appellant,

v.

A. FROST, INC., U.S. Gold & Diamond Centers,
Inc., and Donald Duffy, Appellees.

A. FROST, INC., and U.S. Gold & Diamond Centers, Inc.

v.

Michael HAHALYAK, Trustee of the Clark Building, Appellant.

Superior Court of Pennsylvania.

Argued April 6, 1995.

Filed July 21, 1995.

Reargument Denied Sept. 29, 1995.

496

Michael Hahalyak, Pittsburgh, in pro. per.

Gregory B. Jordan, Pittsburgh, for A. Frost, Inc.

Neal Brendel, Pittsburgh, for Duffy.

Before POPOVICH, FORD ELLIOTT and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Allegheny County denying appellant's motion for post-trial relief following the trial court's entry of a Final Adjudication and Decree Nisi. After careful review, we affirm.

Examination of the record reveals the following: This case involves a breach of contract action arising over appellees, A. Frost, Inc. and U.S. Gold & Diamond Center, Inc.'s (collectively "U.S. Gold") attempt to exercise a right of first refusal for a retail space in the Clark Building in Pittsburgh.

U.S. Gold is a retail jeweler conducting its business in the Clark Building. In January of 1992, U.S. Gold entered into a lease for Room 215 of the Clark Building with Michael Hahalyak ("Clark"), trustee of the same building for Room 215. Simultaneous with the execution of the lease, these parties entered into a separate agreement whereby U.S. Gold agreed

498

to pay Clark an inducement payment [1] of $61,000 upon execution of the lease that would be paid in addition to the monthly rental payments. The agreement provided U.S. Gold a right of first refusal to lease Room 214 or Room 216 if either became vacant and expressly stated: [2]

Clark shall give Frost or Assignee right of first refusal to lease one or both of said rooms upon the same terms and conditions as Clark would lease either of said rooms to a bona fide third party. Clark shall give Frost or Assignee written notice of (i) *the terms and conditions of any proposed lease to such bona fide third party, and (ii) notice of the amount, if any, such bona fide third party would pay as an inducement to Clark to lease either of the said premises to it.* Clark shall include in said notice copies of any proposed written lease or written agreement for any additional payment to Clark. Frost or Assignee shall have thirty (30) days after receipt of such notice to *accept in writing the terms and conditions of the lease and the inducement payment.*

(Emphasis added).

Two months later, apparently forgetting about U.S. Gold's right of first refusal, Clark entered into a written agreement with Donald Duffy, a U.S. Gold competitor and fellow tenant of the Clark Building, to lease Room 216 to Duffy, in the event it became vacant ("Duffy Agreement"). At that time, Duffy was a tenant of Room 206 of the Clark Building. The Duffy Agreement provided that Duffy would pay Clark an inducement payment of $25,000.00 for making Room 216 available under a ten-year lease and that Duffy would vacate Room 206. Duffy and Clark also agreed to the written terms of a proposed lease for Room 216 which lease did not state that Duffy vacate Room 206.

1. Inducement payments were given for different room locations and varied according to the desirability of the room location, that is, rooms that were in higher consumer traffic areas appeared to carry higher inducement payments.

2. U.S. Gold intended to expand its business to include at least one room in addition to room 215.

Clark notified U.S. Gold of the Duffy Agreement and the proposed lease approximately one year later, in March of 1993. On March 10, 1993, Clark provided U.S. Gold with a copy of the Duffy Agreement for Room 216 and on March 12, 1993, provided U.S. Gold with a copy of Duffy's proposed lease for Room 216. Shortly thereafter, on April 2, 1993, U.S. Gold informed Clark that it was exercising its right of first refusal by accepting the terms and conditions of the proposed lease for Room 216 and agreeing to pay the $25,000 inducement payment that Duffy had agreed to pay for Room 216.

Clark rejected U.S. Gold's attempt to exercise its right of first refusal, claiming that the right did not apply in this case. In addition, Clark contended that U.S. Gold could not meet the same terms and conditions offered by Duffy in the Duffy Agreement because, in addition to paying a $25,000 inducement payment, Duffy was also going to leave its store cases behind and vacate Room 206. Clark also intimated that it was going to provide Room 206 to one Amitabh Mehta for $85,000. On March 10, 1993, Clark provided U.S. Gold with a proposed agreement to lease Room 206 to Mehta. This proposed agreement was never signed by Mehta, and Mehta never indicated that he was going to proceed with the proposed agreement.

U.S. Gold, in an April 7, 1993, letter, disagreed with Clark's position, stating that, consistent with paragraph four of the Agreement, U.S. Gold was accepting the "terms and conditions of the proposed [Duffy] lease" for Room 216 and agreeing to pay "the amount, if any, such bona fide third party would pay as an inducement to Clark to lease" Room 216. Clark apparently continued to disagree with U.S. Gold and executed a lease agreement for Room 216 with Duffy on April 26, 1993. However, the lease executed on that date was different from the proposed Duffy lease previously accepted by U.S. Gold in that the proposed lease had stated on page 4 that the lease was the entire agreement between the parties, the new lease contained an exception to this clause, purportedly incorporating the Duffy Agreement:

except the Agreement dated April 10, 1992 and the letter agreement, of even date herewith, where as consideration hereto, Lessee agrees to surrender Room 206.

On August 4, 1993, Clark filed an Action for Declaratory Judgment against U.S. Gold and Donald Duffy, seeking relief in the form of a judgment declaring the lease executed by Duffy and Clark to be unencumbered by any claims asserted by U.S. Gold and denying U.S. Gold the right to exercise its right of first refusal.

On August 31, 1993, Room 216 became vacant and U.S. Gold informed Clark that it was prepared to occupy Room 216 pursuant to its right of first refusal. Clark refused to honor U.S. Gold's request and began altering the condition of Room 216 to prepare the space for Duffy. Consequently, on September 7, 1993, U.S. Gold filed a Complaint in Equity alleging breach of contract and a Motion for Special Relief and/or Preliminary Injunction seeking to compel Clark to honor U.S. Gold's right of first refusal and to prevent Clark from leasing the property to another party.

Clark's case and U.S. Gold's case were consolidated, and, after hearing and argument on both, the trial court entered an order granting U.S. Gold a preliminary injunction that barred Clark from leasing, tendering possession of, altering, or allowing the alteration of room 216. The injunction required Clark to honor U.S. Gold's right of first refusal.

A trial was scheduled for April 13–15, 1994, by an order dated January 10, 1994. Appellant requested a continuance on two occasions [3] because he had a trial before Judge Wettick that was scheduled to begin on April 11, 1994, pursuant to an order entered on February 16, 1994. Judge Friedman denied appellant's request because she had no other hearing dates available. Also, when Judge Friedman entered the order she had requested a response from all counsel by January 18 as to

3. Appellant requested a continuance, by letter, on March 16, 1994, and made a second request for a continuance, by motion, on April 8, 1994.

whether the April 13 date was satisfactory.[4] Judge Friedman made it clear that if the parties did not respond she would assume that the hearing date was satisfactory. Appellant did not respond to Judge Friedman's letter.

Neither appellant nor his other counsel of record appeared at the trial even though trial before Judge Wettick concluded on April 13. Judge Friedman conducted the hearing, and issued her adjudication per Pa.R.C.P. 1517 in which she held that U.S. Gold was entitled to recover as damages its lost profits caused by Clark's breach of contract. She also ordered, by a decree nisi, (1) that judgment be entered against Clark, and in favor of U.S. Gold; (2) that Clark execute a lease for the subject premises with U.S. Gold; and (3) that, until the judgments for monetary damages are paid in full, U.S. Gold maintained a right of set-off as to money now owed or owing in the future to Clark. Set-off damages and lost profits damages were also awarded to appellee Duffy. Clark filed a post-trial motion for relief and two addenda. The second addendum was stricken as untimely by order dated June 27, 1994. Ultimately, by order dated July 6, 1994, Clark's post-trial motions were denied, and this appeal followed.

Herein, appellant raises the following questions for review:

I. Did Judge Friedman commit an abuse of discretion in finding that U.S. Gold met "the same terms and conditions" to lease room 216 as offered by Duffy because the option is ambiguous and it was prepared by U.S. Gold?

II. Did Judge Friedman commit an error of law (a) in applying as the controlling law the multi-asset/multi-property transaction cases cited by counsel for U.S. Gold in his proposed findings which Judge Friedman adopted, and (b) in refusing to discuss the cases cited by the trustee pertaining to the law of options and their interpretations?

III. Did Judge Friedman commit a gross abuse of discretion in finding that Duffy's surrender value of room 206 to Clark constituted an irrelevant and worthless transaction

4. Appellant was represented by himself and one M.A. Mullock in this case.

without any value to Clark and that room 216 had an "admitted surrender" value of $25,000?

IV. Did Judge Friedman err in not permitting the trustee the opportunity to testify on his own behalf to answer the many prejudicial, injudicial and unfounded statements without evidentiary basis made by Judge Friedman in her memorandum, and in her suppressing every request by the trustee for an opportunity to be heard, even to the point of refusing to continue the hearing before her when the trustee was compelled to be present in a jury trial, and deny the trustee due process in violation of the 14th Amendment of the U.S. Constitution?

■ Our standard of review is as follows: When reviewing the decision of an equity court, the chancellor's findings of fact will stand unless there has been an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings or there has been an error of law. *Masloff v. Port Auth. of Allegheny Cty.*, 531 Pa. 416, 421, 613 A.2d 1186, 1188 (1992).

■ We first address appellant's contention that Judge Friedman abused her discretion in finding that U.S. Gold met the terms and conditions necessary to exercise its right of first refusal because the option was ambiguous and it was prepared by U.S. Gold.

■ We find no merit to this assertion in light of our Rules of Appellate Procedure that require an appellant to buttress his or her argument with legal authority. Pa.R.A.P. 2119(a); *Nimick v. Shuty,* 440 Pa.Super. 87, 655 A.2d 132 (1995); *Burrell Construction & Supply Co. v. Straub,* 440 Pa.Super. 596, 656 A.2d 529 (1995). Arguments not properly developed are waived. *Nimick,* 655 A.2d at 138; *Burrell Construction,* 656 A.2d at 533. Here, appellant simply presents us with a rambling discourse as to why appellee U.S. Gold did not meet the terms and conditions of its right of first refusal. He cites no authority for his argument. In fact, review of the record reveals that appellant has failed to cite legal authority to

support this position throughout these proceedings. There-fore, we find this issue waived.

■ *Arguendo,* if this issue were not waived, appellant would still not be entitled to relief. A contract that contains clear and unambiguous language must interpreted in accor-dance with its plainly expressed intent. *Atlantic Refining Co. v. Wyoming Nat. Bank,* 356 Pa. 226, 233, 51 A.2d 719, 723 (1947) (citations omitted); *Dept. of Transportation v. Manor Mines, Inc.,* 523 Pa. 112, 565 A.2d 428 (1989). The right of first refusal agreed upon by U.S. Gold and appellant is clear and unambiguous. Appellant was required to give notice to U.S. Gold of the terms and conditions of a proposed lease to a third party and the amount the third party would pay as an inducement. U.S. Gold properly notified Clark within thirty days of receiving the proposed Duffy lease of its intention to accept the terms and conditions and the inducement payment in the proposed lease.[5] Thus, appellant's first allegation of error fails on this basis also.

Next, appellant claims that the lower court erred in its application of the law and by refusing to discuss cases cited by him pertaining to the law of options. We disagree.

■ "[A] right of first refusal as to the conveyance of a property cannot be defeated by including that property in a multi-property or multi-asset transaction. *Boyd & Mahoney v. Chevron, U.S.A.,* 419 Pa.Super. 24, 29, 614 A.2d 1191, 1194 (1992).

Here, appellant erroneously argues that U.S. Gold did not meet the requirements of its right of first refusal because Duffy agreed to give up room 206 and Mehta would pay $85,000 for room 206. Appellant's argument fails for two reasons. *Boyd, supra,* clearly states that a right of first refusal cannot be circumvented by the use of such a tactic. In *Boyd,* we specifically stated:

5. Appellant asserts that the right of first refusal must be construed in his favor because it was prepared by U.S. Gold. Review of the record provides no basis to support this bald assertion by appellant.

The right of first refusal is a valuable property right. The importance of the right to its holder is that the holder may assert ownership of the property provided the owner meets the conditions of the right. The appellants' argument that the right can be nullified simply by packaging the property for sale with another asset not so encumbered has no merit. Appellants' logic would deprive the holder of the right the benefit of his or her bargain.

*Id.* 30, 614 A.2d at 1194.

Clearly, the language of *Boyd* applies to the instant case. Appellant cannot claim that U.S. Gold did not meet the terms of their agreement simply by adding room 206 and the Mehta "inducement payment" to the transaction. Also, evidence established that U.S. Gold desired room 214 or 216 so that it could establish a larger retail space.

█ The second reason that this claim must fail is that the agreement with Duffy did not state that the total inducement payment would be $110,000 for room 216. The agreement only states that Duffy would provide appellant with a $25,000 inducement payment. Appellant, in his deposition, stressed the importance of the location of room 216 and the importance of the inducement payments. If an inducement payment were so important, then the total amount of the payment would be included in any proposed agreement between Clark and a third party. Moreover, even if we were to assume that the $110,000 figure was correct, there is no evidence that Mehta was willing to rent Duffy's vacated room for $85,000. The only evidence of this is appellant's unfounded assertions. In fact, appellant admits that Mehta never signed a lease. Thus, we must dismiss this allegation of error.

█ Appellant also contends that the court erred in refusing to consider option cases that he submitted to the court. After scouring the record, we do not find appellant provided the lower court with any cases dealing with options. However, appellant does provide us with some citation to authority and legal argument on this issue. He argues that *West Penn Realty Company v. Acme Markets, Inc.,* 224 Pa.Super. 202,

303 A.2d 836 (1973), is controlling on this issue. *West Penn* involved an ambiguous option clause in a lease. *Id.* 205, 303 A.2d at 837. The lessee had an option to renew his lease, and this option had to be exercised at a particular time. *Id.* The parties renegotiated the original lease, creating an ambiguity as to the proper time for the lessee to exercise the option. *Id.* We held that the lower court erred in granting the lessee's motion for judgment on the pleadings. *Id.* An ambiguity existed in the option clause, and we stated that it must be determined which party drafted the lease so that the option clause could be properly interpreted. *Id.* Appellant's reliance on *West Penn* is misplaced. There is no ambiguity in the right of first refusal involved in this case. This case also does not involve an option to extend a lease term. Accordingly, we find that *West Penn* does not provide appellant a basis for relief.

■ Next, appellant contends that Judge Friedman committed a gross abuse of discretion in finding that Duffy's surrender value of room 206 to Clark constituted an irrelevant and worthless transaction without any value to Clark and that room 216 had an "admitted surrender" value of $25,000.

■ Material that does not appear in the official record record cannot be considered on appeal. *Pittsburgh's Airport Motel, Inc. v. Airport Asphalt & Excavating Company,* 322 Pa.Super. 149, 469 A.2d 226 (1983).

Here, Judge Friedman correctly found that room 216 had a surrender value of $25,000. The only evidence that room 206 had a surrender value of $85,000 is appellant's assertion that Mehta offered this amount for the room. There is absolutely no additional proof that supports appellant's valuation. Appellant's contention is further undermined due to the fact that, in his deposition, he concedes that there was never a contract for room 206 between him and Mehta. In fact, appellant was uncertain as to the entire "Mehta" situation as evidenced by the fact that he was unsure which member of the Mehta family was going to be renting room 206. Because the record does not support, and in fact contradicts, appellant's assertions, we find this argument meritless. *See, Dudash v. Du-*

*dash*, 313 Pa.Super. 547, 460 A.2d 323 (1983) (holding that chancellor's findings of fact will not be disturbed on review if there is support for these findings in the record).

■ Finally, appellant erroneously claims that he was denied due process of law pursuant to the 14th Amendment to U.S. Constitution because Judge Friedman denied his requests for a continuance.

■ Due process requirements are satisfied when a person is given notice and opportunity to be heard and defend in an orderly proceeding. *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 394 A.2d 932 (1978) (citation omitted).

Instantly, appellant suffered no due process violations as a result of Judge Friedman's denial of his requests for a continuance. Judge Friedman entered an order on January 10, 1994, setting an April 13–15, 1994, trial date. Appellant was also required to appear at a trial before Judge Wettick on April 11, 1994, pursuant to an order entered February 16, 1994. Obviously appellant knew of the trial for the case at bar before he knew of the trial before Judge Wettick. Appellant did not request a continuance from Judge Wettick. Moreover, appellant's trial before Judge Wettick was completed by April 13, 1994. Thus, he could have appeared at his trial before Judge Friedman. Finally, appellant's argument also fails because he had other counsel who could have represented his interests at the proceedings. M.A. Mullock and John Hahalyak both appeared as appellant's counsel during these proceedings and could have appeared at the trial to present appellant's arguments that were contained in his deposition testimony. Obviously, appellant was in no way deprived of his due process rights and this argument must fail.[6] *See generally, Goetz v. Dept. of Environmental Resources*, 149 Pa. Commwlth. 230, 613 A.2d 65 (1992) (due process requirements

6. We also note that Judge Friedman requested a response when she set the hearing date and appellant's failure to respond to this letter led Judge Friedman to believe this date was appropriate. Thus, appellant's due process claim is meritless for this reason as well.

do not mandate an absolute right to be heard, only an opportunity to be heard).

Order affirmed.