## Poeta v. Jaffe

*Steven J. Fram,* for plaintiffs.
*David Smith,* for defendants.

SHEPPARD JR., *J.,* May 30, 2001—Defendants, Richard P. Jaffe, Robert P. Krauss, Barry J. Frank and Harvey N. Shapiro have filed preliminary objections to the complaint of plaintiffs, John Poeta and Beth Stern-Fleming.

For the reasons set forth, the court will issue a contemporaneous order sustaining the objections and permitting plaintiff to file an amended complaint.

## BACKGROUND

This matter arises from the breakup of the law firm of Mesirov, Gelman, Jaffe, Cramer & Jamieson L.L.P. Mesirov's partnership agreement addresses the firm's duration:

"The partnership shall continue until dissolved. The partnership can be dissolved by the affirmative vote of a majority of the partners. The admission of a new partner or the retirement, withdrawal, disability or death of a partner shall not, in the absence of a vote, cause the dissolution of the partnership." Agreement §2.1.

In addition, section 9.4 of the agreement provides that a withdrawing firm partner is "entitled to a final allocation" and that such allocation "shall not penalize the partner solely because of the withdrawal but may take into account the effect of the withdrawal on the partnership."

In early 1999, Mesirov attempted to attract and to retain younger partners. As part of this effort, Edward DeMarco, a Mesirov partner, approached Poeta and suggested the possibility of his becoming a partner at Mesirov. The complaint alleges that, to induce Poeta to become a partner, Krauss and Shapiro represented that Mesirov was going to begin increasing the compensation for the younger partners, in accordance with their economic contributions to the firm, and that senior partners would be limited to cost of living increases. Based in large part on these representations, Poeta became a partner in April 1999.

Mesirov undertook similar efforts with regard to Stern-Fleming. Prior to January 1999, Stern-Fleming was an associate at the firm. In 1998, the defendants

told Stern-Fleming that the firm would limit increases in compensation to senior partners to cost of living adjustments and would materially increase compensation to younger partners. Allegedly relying on these representations, Stern-Fleming agreed to remain at Mesirov and became a partner in January 1999.

The complaint asserts that, in January 2000, the firm managers gave certain senior partners substantially increased allocations. These allocations allegedly were inconsistent with the representations made to Poeta and Stern-Fleming. In addition, the allocations made to junior partners, including Poeta and Stern-Fleming, were smaller than those promised, with Poeta's allocation being insufficient to pay his federal and state tax liabilities for the previous year. Although Mesirov increased Stern-Fleming's allocation nominally after several junior partners left the firm, these increases are alleged to have been inadequate, and no increase was made to Poeta's allocation.

In early 2000, Jaffe announced that the firm was going to begin formal "merger" negotiations with other Philadelphia law firms, with an expected dissolution by June 1, 2000.[1] When a firm that had no need for attorneys in the plaintiffs' field emerged as the leading can-

---

1. The plaintiffs contended at oral argument that this announcement indicated Jaffe's express will to terminate the firm as a partnership and caused the firm's immediate dissolution. Transcript of oral argument, May 7, 2001, at 37-39. On this basis, plaintiffs claim that their departure did not constitute a withdrawal because Jaffe's earlier statements constituted a dissolution of the firm. *Id.* at 41-43. There are no allegations to this effect in the complaint. In addition, the defendants specifically contest this allegation and assert that the firm has *not* been dissolved. *Id.* at 53.

didate for a merger partner, Poeta and Stern-Fleming began exploring options at other firms. As merger discussions continued, Jaffe advised the partners that, if any of them decided to leave Mesirov prior to the consummation of a merger, his or her departure would not be taken into consideration with respect to fiscal year 2000 allocations.

On April 25, 2000, the plaintiffs notified Jaffe that they had been offered positions at Stevens & Lee P.C. Jaffe allegedly reiterated that any decision by the plaintiffs to depart prior to any merger would have no impact on their 2000 allocations. Jaffe requested, however, that any announcement of their departure from Mesirov and their move to Stevens be delayed by one or two weeks, that the plaintiffs remain at the firm until the end of May 2000 and that they continue to collect outstanding receivables owed to the firm. Poeta and Stern-Fleming agreed and contend that they complied with these requests.

Although the plaintiffs deny that they contacted the press, the *Legal Intelligencer* on May 2, 2000, published an article about the plaintiffs' rumored move to Stevens. That same day, Jaffe demanded that Poeta leave Mesirov as soon as possible. At some point soon thereafter, Poeta and Stern-Fleming departed from the firm.[2]

On May 25, 2000, it was announced that the defendants and other attorneys at Mesirov had entered into an agreement to "merge" with Schnader Harrison Segal Lewis LLP.[3] According to the complaint, the defendants

---

2. The exact date of the plaintiffs' departure is not set forth in the complaint.

3. This transaction is referred to as the "merger."

agreed to convey to Schnader substantially all of Mesirov's assets in return for capital contribution credit for the defendants and those former partners who moved to Schnader. Plaintiffs estimate these "assets" to include approximately $800,000 in accounts receivable and work in progress originated by Poeta and Stern-Fleming during the first half of 2000.

The merger was effected on May 31, 2000. Since then, the defendants allegedly have assumed control over all Mesirov assets. Plaintiffs also contend that the defendants have used and are using the assets to guarantee allocations from Schnader for 2000 in excess of their 1999 allocations from Mesirov. In spite of repeated demands, the defendants have refused to provide Poeta and Stern-Fleming with details of the assets or firm liabilities, or information regarding the winding up of Mesirov's affairs and the transfer of assets to Schnader. In addition, the defendants allegedly have indicated that they will not pay Poeta or Stern-Fleming any 2000 allocations.

The complaint sets forth five counts: a breach of fiduciary duty claim against all defendants requesting an equitable accounting and the appointment of a receiver; two counts for breach of fiduciary duty, one by each plaintiff and two counts for breach of the duty of good faith and fair dealing, one by each plaintiff. The defendants contend that the complaint is neither legally sufficient nor adequately specific and that the plaintiffs are not entitled to equitable relief.

## DISCUSSION

The plaintiffs' argument boils down to a simple statement: the firm's dissolution, as effected by Jaffe's an-

nouncement in anticipation of a merger, preceded their departure from the firm. As such, the firm is currently in a "winding-up" stage, during which partners at the time of dissolution, including the plaintiffs and the defendants, owe each other an ongoing fiduciary duty. The court does not find this persuasive and has sustained the objections.

### I. *The Plaintiffs' Claims for Breach of Fiduciary Duty and Breach of the Duty of Good Faith and Fair Dealing Are Legally Insufficient*

In general, partners owe a fiduciary duty to each other to act in good faith during the life of the partnership. 15 Pa.C.S. §8334. Under Pennsylvania law, this duty extends throughout the partnership's wind-up period, which follows dissolution and precedes termination of the partnership. *In re LaBrum & Doak LLP,* 227 B.R. 391, 408 (Bankr. E.D. Pa. 1998) (citing, inter alia, 15 Pa.C.S. §§8331, 8334(a), 8352; *Clement v. Clement,* 436 Pa. 466, 260 A.2d 728 (1970)). Apparently, the parties agree, however, that no ongoing duty is owed to partners who withdraw prior to a partnership's dissolution.[4]

---

4. The court has inferred this from the absence of any argument by the plaintiffs that they withdrew prior to dissolution and that the defendants nonetheless owed them a fiduciary duty for their conduct after the plaintiffs' withdrawal. While no Pennsylvania cases speak to this particular issue, the consensus appears to be that, in the absence of dissolution, fiduciary duties terminate upon a partner's withdrawal. See *Finkelstein v. Security Props. Inc.,* 888 P.2d 161, 167 (Wash. Ct. App. 1995) (withdrawing partner was not owed a fiduciary duty by ongoing partners after his withdrawal); Allen R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein on Partnership* (1991) §6.07(a)(7) ("[w]here the partnership continues after a partner's dissociation, the

Because there are no allegations of misconduct by the defendants before May 2000, this puts the plaintiffs in the position of arguing that the firm's dissolution was effected prior to their departure.

According to the agreement, the firm "can be dissolved by the affirmative vote of a majority of the partners," with the withdrawal of a partner being of no effect in the absence of a vote. The complaint does not assert that any such vote was taken, nor does it explicitly allege that the firm was dissolved prior to the plaintiffs' departure. Thus, the plaintiffs rely solely on Jaffe's announcement that the firm was expected to dissolve by June 1, 2000. Plaintiffs assert that this announcement, which was made prior to their departure from the firm, constituted the express will of Jaffe and caused the immediate dissolution of the partnership. Transcript at 37-38. On this basis, and on this basis alone, they contend that they did not withdraw prior to the firm's dissolution and that the defendants owe them ongoing fiduciary duties during the winding-up process.

In advancing this argument, plaintiffs rely on *Beckman v. Farmer,* 579 A.2d 618 (D.C. Ct. App. 1990), in which the court found that a two-person partnership had been terminated by the express will of one of the partners. *Beckman,* however, is distinguishable from this case. There, the dissolving partner insisted that the other

---

ongoing partners probably have no fiduciary duty to withdrawn partners ...."). Cf. *Hansel v. Hansel,* 300 Pa. Super. 548, 556-57, 446 A.2d 1294, 1298-99 (1982) (fiduciary duty owed to estate of partner whose death led to partnership's dissolution); *Zebley v. Ostheimer,* 368 Pa. 21, 81 A.2d 546 (1951) (partner whose withdrawal leads to dissolution of partnership is entitled to an accounting in equity).

partner leave immediately. The partner in question also took steps to transfer funds from partnership bank accounts to his own and revoked the other partner's authority to use firm accounts. Significantly, the dissolution of the partnership in *Beckman* was not governed by a written agreement.

Here, Jaffe allegedly stated that the firm would begin merger negotiations with an expected dissolution date of June 1, 2000. This alone does not indicate Jaffe's express will that the firm be dissolved immediately. This conclusion is logical because the complaint does not allege that any events that typically accompany dissolution and the winding-up process took place in the aftermath of Jaffe's announcement. Cf. *Stainton v. Tarantino,* 637 F. Supp. 1051, 1073 (E.D. Pa. 1986) (filing a complaint for a judicial decree of dissolution indicated express will of a partner to dissolve partnership). As a result, there is no indication in the complaint that the firm was dissolved prior to the plaintiffs' withdrawal.

As noted, continuing partners do not owe a withdrawing partner a fiduciary duty or a duty of good faith after he or she withdraws from the firm. Thus, the defendants' alleged misconduct, all of which took place after the plaintiffs' withdrawal as partners, cannot give rise to claims of a breach of fiduciary duty or a breach of a partner's duty of good faith. Accordingly, these claims must be dismissed.

## II. *Stern-Fleming and Poeta Are Not Entitled to an Accounting in Equity*

In requesting an accounting, a complaint "seeks to turn over to the party wrongfully deprived of posses-

sion all *benefits* accruing to defendant by reason of its wrongful possession." *Boyd & Mahoney v. Chevron U.S.A.,* 419 Pa. Super. 24, 36, 614 A.2d 1191, 1197 (1992). (emphasis in original) Pennsylvania law does not permit an equitable accounting "where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, *or* the plaintiff possesses an adequate remedy at law." *Rock v. Pyle,* 720 A.2d 137, 142 (Pa. Super. 1998). (emphasis in original) See also, *Fudula v. Keystone Wire & Iron Works Inc.,* 283 Pa. Super. 502, 507, 424 A.2d 921, 923 (1981) (in determining whether an accounting should be sought in equity or at law, the question is whether "a jury would not be qualified to state such an account, or even that it is doubtful whether adequate relief could be had at law"). In deciding a request for an accounting, "it is reasonable for the court to permit some latitude since often times it is not certain what claims a plaintiff may have until the accounting is completed." *In re Estate of Hall,* 517 Pa. 115, 136, 535 A.2d 47, 58 (1987). (footnote omitted) But see *Buczek v. First National Bank of Mifflintown,* 366 Pa. Super. 551, 556, 531 A.2d 1122, 1124 (1987) ("[e]quitable jurisdiction for an accounting does not exist merely because the plaintiff desires information that he could obtain through discovery").

In this matter, the court may infer from the allegations in the complaint that the accounts in dispute are mutual and complicated. It appears, however, that the plaintiffs essentially are demanding money damages for the defendants' alleged breach of their contractual duties under the agreement. On this basis, the court

concludes that the plaintiffs have an adequate remedy available at law that precludes them from pursuing an accounting in equity. Thus, their claim for such an accounting must be dismissed. Cf. *Allegheny Plastics Inc. v. Stuyvesant Insurance Co.,* 414 Pa. 381, 382, 200 A.2d 775 (1964) ("the substance of plaintiffs complaint is an alleged breach of contract and the ultimate relief is money damages, therefore, we are of opinion that there is an adequate remedy at law").[5]

## CONCLUSION

The complaint does not allege facts to support the plaintiffs' claims. Accordingly, the objections are sustained. Plaintiffs may file an amended complaint within 20 days of the date of this opinion.

This court will enter a contemporaneous order consistent with this opinion.

---

5. The court notes that this does not preclude the plaintiffs from bringing an action for an accounting at law. See *Donatelli v. Carino,* 384 Pa. 582, 584, 122 A.2d 36, 37 (1956) ("a partnership accounting may be sought, sometimes in an action at law, sometimes in equity"). Indeed, defendants have conceded that the plaintiffs are entitled to sue for a remedy at law. Transcript at 24, 51. As a result, the court is permitting the plaintiffs to file an amended complaint. See *Werner v. Zazyczny,* 545 Pa. 570, 583, 681 A.2d 1331, 1338 (1996) (leave to amend a pleading "should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party"); *Frey v. Pennsylvania Electric Co.,* 414 Pa. Super. 535, 538, 607 A.2d 796, 797 (1992) ("parties are liberally granted leave to amend their pleadings").

## ORDER

And now, May 30, 2001, upon consideration of the preliminary objections of defendants, Richard P. Jaffe, Robert P. Krauss, Barry J. Frank and Harvey N. Shapiro, to the complaint of plaintiffs, John Poeta and Beth Stern-Fleming, the plaintiffs' response in opposition and oral argument, and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered that the preliminary objections are sustained.

Plaintiff may file an amended complaint within 20 days of the date of this order.