J-S09018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TRI-OUTDOOR, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LUCAS KEYSER AND DEED HOLDING | : | |
| COMPANY, A PENNSYLVANIA | : | |
| LIMITED LIABILITY CORPORATION | : | |
| | : | |
| Appellees | : | |
| | : | |
| MANOR SIGNS 6, LLC, | : | |
| | : | |
| Intervenor | : | No. 2053 EDA 2021 |

Appeal from the Judgment Entered October 6, 2021,
in the Court of Common Pleas of Northampton County,
Civil Division at No(s): C-48-CV-2017-02273.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED APRIL 18, 2022**

In this dispute over the sale of commercial land, Tri-Outdoor, Inc. ("Tri") appeals from the judgment denying its request for specific performance from Lucas Keyser and Deed Holding Company ("DHC"). Because Tri had an adequate remedy at law, we affirm.

In a prior appeal, we explained the facts of this case as follows:

> [On August 27, 2015, Mr.] Keyser and Tri entered into a lease agreement, "pursuant to which Tri would lease the [disputed] Property for purposes of erecting a billboard." Trial Court Opinion, 2/8/18, at ¶ 5. The term of the lease was defined as "a term of 20 years, beginning upon completion of construction and acquiring all necessary

---

[*] Former Justice specially assigned to the Superior Court.

local and state permits." *Id.* at ¶ 6. Tri was not obligated to pay rent until either the billboard was constructed or the beginning of the term of the lease, whichever was later.

The lease agreement also granted Tri a right of first refusal. *See id.* at ¶ 7. Under the right of first refusal, Tri had the right to purchase the Property "at the same price and on the same terms as any proposed sale that [Mr.] Keyser desires to consummate." *Id.* [Mr.] Keyser was required to provide written notice to Tri of any offer he received. Tri had 30 days from this notice in which to exercise its right of first refusal.

After the parties signed the agreement, Tri paid for a survey of the Property and a wetlands study. Further, Tri paid for contractors to prepare the Property for construction.

Subsequently, [Mr.] Keyser informed Tri that he had received an offer to buy the Property for $18,000. [Mr.] Keyser mailed written notice of the offer to Tri on February 14, 2017. However, on March 6, 2017, "during Tri's 30-day period to review the Agreement of Sale to determine whether it would exercise its right to purchase, [Mr.] Keyser sold the property to DHC for $9,000." *Id.* at 15. "[Mr.] Keyser never informed Tri of the Agreement of Sale for $9,000." *Id.* at 16. Three days later, Tri notified [Mr.] Keyser of its intent to exercise its right of first refusal.

*Tri-Outdoor, Inc. v. Keyser*, 1309 EDA 2018, 2019 WL 1300647, at *2 (Pa. Super. 2019) (unpublished) (some punctuation and citations omitted).

This litigation commenced when:

Tri filed a complaint requesting specific performance of the right of first refusal and asserting a claim for tortious interference with contractual relations against DHC. Tri did not plead a claim for money damages. After a bench trial, the court found that Tri had not established valid consideration for the lease agreement, and therefore found in favor of [Mr.] Keyser. The court further concluded that, in the absence of a valid contract, Tri could not establish its tortious interference with contractual obligations claim against DHC.

- 2 -

*Id.* at *1.

In its prior appeal, Tri neglected to challenge "the trial court's [non-jury decision] against [its] claim for tortious interference with contractual relations." *Id.* at *1 n.1. Thus, the dismissal of Tri's tortious-interference claim against DHC is now final.

Regarding specific performance, this Court reversed and remanded for further proceedings. We disagreed with the trial court's conclusion of law that there was no consideration between Tri and Mr. Keyser to establish a contract between them. *See id.* *3.

"Under the lease agreement, Tri had no obligation to pay rent until the billboard was built and properly permitted." *Id.* "However, this does not mean that Tri did not provide valuable consideration under the agreement." *Id.* Because "Tri's promise to pay rent [could] be enforced by implying a duty to utilize reasonable efforts in erecting and permitting the billboard, it [was] valid consideration." *Id.* Therefore, we concluded Tri and Mr. Keyser had a valid contract to lease the Property.

We then held, "under the facts found by the [trial] court, it is clear [Mr.] Keyser breached the lease agreement by not informing Tri of the $9,000 offer." *Id.*, at *4. Without considering whether Tri could obtain the remedy of specific performance, as a matter of law, this Court vacated and remanded to the trial court to decide, in the first instance, whether specific performance should issue in light of the equities between the parties. *Id.*

On remand, a new trial judge was assigned to the case. With the parties' consent, the judge reviewed the transcript of the prior trial. The trial court found, as a fact, that DHC had neither actual nor constructive notice of Tri's interests in the Property. Thus, it concluded DHC was a subsequent *bona fide* purchaser for value and dismissed Tri's claim for specific performance.

Tri moved for post-trial relief, which the trial court denied. This timely appeal followed.

Tri raises three issues, which we have reordered for ease of disposition:

1. Whether the trial court's decision . . . was against the weight of the evidence and shocks one's conscious [sic]?

2. Whether the trial court erred and abused its discretion in failing to grant specific performance of the right of first refusal . . . in failing to weigh [Mr.] Keyser's breach of contract and lack of remedy at law when evaluating the equities for granting specific performance?

3. Whether the trial court erred and abused its discretion in finding [DHC] was a *bona fide* purchaser for value?

Tri's Brief at 5.

## 1. Weight-of-the-Evidence Claim

We begin with Tri's weight-of-the-evidence claim. Tri believes the trial court's non-jury decision was against the weight of the evidence and that the decision shocks one's conscience. As this framing of the issue implies, and as Tri's argument reveals, it fundamentally miscomprehends our standard of review for a weight-of-the-evidence claim.

We do not reconsider whether a non-jury decision is against the weight of the evidence or whether it shocks the conscience of this Court. Instead, appellate review of a weight claim asks whether the trial court abused its discretion. *See Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994). Abuse of discretion may take one of three forms. An abuse of discretion occurs only where "the trial court renders a judgment that is [(1)] manifestly unreasonable, arbitrary, or capricious; or [(2)] fails to apply the law; or [(3)] was motivated by partiality, prejudice, bias, or ill will." *Ambrogi v. Reber*, 932 A.2d 969, 974 (Pa. Super. 2007).

Rather than explaining which abuse that it thinks occurred and why, Tri repeatedly asserts that the non-jury decision was against the weight of the evidence. *See* Tri's Brief at 29-32. Hence, it frames this argument as if our standard of review were *de novo*.

Even if we disagreed with the trial court's disposition of the weight-of-the-evidence claim, we have long held that an "abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment." *Johnson v. Johnson*, 222 A.3d 787, 789 (Pa. Super. 2019). Thus, when arguing under the abuse-of-discretion standard, it is insufficient to convince us that "the lower tribunal reached a decision contrary to the decision that the appellate court would have reached." *B.B. v. Dep't of Pub. Welfare*, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (some punctuation omitted). In other words, when we review for abuse of discretion, it is not our role to second guess what the trial court should or should not

have decided on a particular issue. Instead, the appellant must demonstrate one of the three abuses described above. **See Ambrogi**, **surpa**. As such, the issue is not whether the non-jury decision shocks the conscience of this Court, but rather, whether the trial court's ruling the non-jury decision did not shock **its** conscience was manifestly unreasonable.

Tri's brief is devoid of any argument as to how the trial court's ruling that the non-jury decision did not shock its conscience was manifestly unreasonable. Therefore, Tri fails to persuade us that the trial court abused its discretion in rejecting Tri's weight claim.

### 2. *Specific Performance & Subsequent* Bona Fide *Purchaser*

Next, we address whether the trial court should have granted judgment, as a matter of law, to Tri on its claim for specific performance.

We review non-jury decisions to determine whether the court's findings are supported by competent evidence and whether the court properly applied the law. **See Stephan v. Waldron Elec. Heating & Cooling LLC**, 100 A.3d 660, 664 (Pa. Super. 2014). The trial judge's factual findings receive the same deference on appeal as a jury's verdict. **See id**. Furthermore, we view the evidence in the light most favorable to and draw all inferences supporting the factual theory of the party that prevailed below. **See id**. However, on questions of law, our standard of review is *de novo*. **See id.** at 665.

A request for specific performance invokes the equitable powers of the trial court. Specific performance "will only be granted if the plaintiff is clearly entitled to such relief, there is no adequate remedy at law, and the chancellor

- 6 -

[*i.e.*, the trial judge] believes that justice requires such a decree." **Barnes v. McKellar**, 644 A.2d 770, 776 (Pa. Super. 1994) (citation omitted).

As we held in Tri's prior appeal, Mr. Keyser breached by reneging on his promise to give Tri a right of first refusal prior to selling the Property. **See Tri-Outdoor**, **supra**. However, a contractual breach does not automatically entitle Tri to specific performance if monetary damages will make Tri whole. Moreover, Mr. Keyser no longer owns the Property, so he cannot transfer the Property's title to Tri. As a matter of basic property law, Mr. Keyser cannot specifically perform this contract. Thus, as explained below, Tri seeks the wrong relief.

Over 120 years ago, in **Thuemler v. Brown**, 18 Pa. Super. 117 (1901) (*en banc*), a landlord entered into a commercial lease with his tenant. The lease contained an option-to-purchase clause. On facts very similar to this case, the landlord sold a portion of the leased land to a third party. This Court held that a breaching landlord/seller's "conveyance of . . . the land stripped him of the power to convey" that land to the disposed tenant, even though the tenant had properly exercised his option to purchase. **Id.** at 120.

As a result, the **Thuemeler** Court held that the sale of land to a third-party, in derogation of an option-to-purchase clause, renders landlord/seller "liable for the **damages** resulting to the lessee by reason of the breach." **Id.** (emphasis added). To the extent the landlord/seller's breach of an option-to-purchase clause causes a tenant to lose the cost of improvements to the land, "the loss thus incurred would be an item for the jury to consider in rendering

their verdict." *Id.* Where, as here, "the party to the contract by his own act makes it impossible for him to perform his covenant, [optionee] is entitled to compensation," instead of specific performance from the landlord/seller. *Id.*

Equity has only interposed the remedy of specific performances in cases where the land at issue was unique. In those instances, the incidental or consequential damages of contract law would not make the optionee whole.

For example, in ***Boyd & Mahoney v. Chevron U.S.A.***, 614 A.2d 1191 (Pa. Super. 1992), we affirmed an award of specific performance to a real-estate-leasing company that had a right-of-first-refusal clause in the seller's deed. The land was highly special to the leasing company, because it was "situated at the entrance to [the leasing company's] commercial development properties." *Id.* at 1194.

Despite the right-of-first-refusal language in its deed, seller sold the land without allowing the leasing company to exercise its right. Buying the land would have allowed the leasing company "to control the architectural design and future development of the area," while losing the land would have obstructed the leasing company's operations and development. *Id.* at 1194–95. Therefore, damages at law would not have adequately compensated the leasing company for seller's breach.

Turning to this case, Mr. Keyser's breach made it impossible for him to perform under the right-of-first-refusal clause. Simply put, he cannot sell the Property for a second time to Tri.

However, unlike in **Boyd & Mahoney**, Tri had no particularly compelling need for this Property (a small triangle with space for a single billboard) such that damages at law would be inadequate to remedy Mr. Keyser's breach. Accordingly, Tri is not entitled to the equitable remedy of specific performance, because it had an adequate remedy at law (*i.e.*, the money Tri spent preparing the Property for erecting the billboard). **See Barnes**, **supra**.

Tri's second issue affords it no appellate relief.

### 3. *Subsequent* Bona Fide *Purchaser for Value*

Tri's final claim of error, regarding whether DHC is a subsequent *bona fide* purchaser for value, is moot, because Tri is not entitled to the remedy of specific performance that it sought from DHC.

And, if this issue were not moot, we would affirm the trial court's decision on its well-reasoned opinion, concluding that DHC had neither actual nor constructive notice of the right-of-first-refusal clause in the lease between Tri and Mr. Keyser. The trial court resolved all credibility determinations and factual disputes in favor of DHC, and the record, viewed in the light most favorable to DHC, adequately supports the court's findings of fact.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/18/2022</u>